CASSIUS C. M. HOWE v. MINNEAPOLIS, SAINT PAUL & SAULT SAINTE MARIE RAILWAY COMPANY.[1]

July 10, 1895.

Nos. 9445—(128).

**Railway Crossing—Looking and Listening—Passenger in Approaching Vehicle.**

The rule that it is negligence per se for one driving a team on a highway not to "look and listen" for trains when approaching a railway crossing is not, as a general rule, applicable to a mere passenger in a vehicle, who has no control over the driver or his management of the team.

**Same.**

The plaintiff was, at the invitation of the owner, riding in a wagon, owned and driven by another. He had no control over the driver or his management of the team. There was no relation of master and servant or principal and agent between them; neither were they engaged in any joint enterprise. There was no evidence that the plaintiff knew that the driver was incompetent or not keeping a proper lookout for trains when approaching a railway crossing. *Held*, that plaintiff's negligence was a question for the jury, notwithstanding the fact that it appeared that if he had exercised the degree of vigilance in "looking and listening" required of one having the control and management of a team he would have discovered the approaching train in time to have avoided injury.

**Amount of Verdict.**

*Held*, also, that the verdict is not so disproportionate to the nature and extent of plaintiff's injuries as to justify this court in setting it aside as excessive.

Appeal by defendant from an order of the district court for Hennepin county, Elliott, J., denying a motion for a new trial. Affirmed.

[1] Reported in 64 N. W. 102.

At the trial, after the charge to the jury, defendant's counsel asked permission to take exception to the written portions of the charge, when he had examined the same, and the court replied, 'Certainly, you can do so." Such leave was granted without the knowledge or consent of plaintiff or his counsel, who were present, but did not hear the same. After the jury had returned a verdict and the court had adjourned for the day, defendant's counsel dictated to the stenographer who had reported the charge certain exceptions thereto, which were, at the time of the settlement of the case, allowed and inserted over plaintiff's objections.

*Alfred H. Bright, George B. Young*, and *M. B. Koon*, for appellant.

It was negligence for plaintiff to rest his safety on a look at 150 feet from the crossing under the existing conditions, even if it be assumed that the train was not visible when it reached that point. Brown v. Milwaukee & St. P. R. Co., 22 Minn. 165; Abbett v. Chicago, M. & St. P. R. Co., 30 Minn. 482, 16 N. W. 266; Mantel v. Chicago, M. & St. P. R. Co., 33 Minn. 62, 21 N. W. 853; Rheiner v. Chicago, St. P., M. & O. R. Co., 36 Minn. 170, 30 N. W. 548; Harris v. Minneapolis & St. L. R. Co., 37 Minn. 47, 33 N. W. 12; Marty v. Chicago, St. P., M. & O. R. Co., 38 Minn. 108, 35 N. W. 670; Weyl v. Chicago, M. & St. P. R. Co., 40 Minn. 350, 42 N. W. 24. The case at bar is more nearly analogous to the above cases than to any of the following, which were held to be for the jury: Shaber v. St. Paul, M. & M. R. Co., 28 Minn. 103, 9 N. W. 575; Kelly v. St. Paul, M. & M. R. Co., 29 Minn. 1, 11 N. W. 67; Faber v. St. Paul, M. & M. R. Co., 29 Minn. 465, 13 N. W. 902; Loucks v. Chicago, M. & St. P. R. Co., 31 Minn. 526, 18 N. W. 651; Howard v. St. Paul, M. & M. R. Co., 32 Minn. 214, 20 N. W. 93; Hutchinson v. St. Paul, M. & M. R. Co., 32 Minn. 398, 21 N. W. 212; Bolinger v. St. Paul & D. R. Co., 36 Minn. 418, 31 N. W. 856; Beanstrom v. Northern Pac. R. Co., 46 Minn. 193, 48 N. W. 778; Hendrickson v. Great Northern R. Co., 49 Minn. 245, 51 N. W. 1044; Miller v. Truesdale, 56 Minn. 274, 57 N. W. 661; Struck v. Chicago, M. & St. P. R. Co., 58 Minn. 298, 59 N. W. 1022. The principles laid down in these cases have been reinforced in cases where foot passengers were injured. Donaldson v. Milwaukee & St. P. R. Co., 21 Minn. 293; Rogstad v. St.

Paul, M. & M. R. Co., 31 Minn. 208, 17 N. W. 287; De Kay v. Chicago, M. & St. P. R. Co., 41 Minn. 178, 43 N. W. 182; Heffinger v. Minneapolis, L. & M. R. Co., 43 Minn. 503, 45 N. W. 1131; Carney v. Chicago, St. P., M. & O. R. Co., 46 Minn. 220, 48 N. W. 912; Clark v. Northern Pac. R. Co., 47 Minn. 380, 50 N. W. 365; Studley v. St. Paul & D. R. Co., 48 Minn. 249, 51 N. W. 115; Magner v. Truesdale, 53 Minn. 436, 55 N. W. 607; Hickey v. St. Paul City Ry. Co., 60 Minn. 119, 61 N. W. 893.   A plaintiff is not excused from a charge of negligence for not seeing a train simply because some part of it is obscured.   Mantel v. Chicago, M. & St. P. R. Co., supra; Freeman v. Duluth, S. S. & A. R. Co., 74 Mich. 86, 41 N. W. 872.   It must be held either that plaintiff did not look, or that his look was careless.   Brown v. Milwaukee & St. P. R. Co., supra; Miller v. Truesdale, supra, and cases cited; Heininger v. Great Northern R. Co., 59 Minn. 458, 61 N. W. 558.   If plaintiff was gazing at smoke to the east, that was no excuse for his otherwise gross negligence.   It is not every diverting circumstance, even near by, that excuses men from the use of their senses when entering upon a railroad track.   Donaldson v. Milwaukee & St. P. R. Co., supra; Rogstad v. St. Paul, M. & M. R. Co., supra; Abbett v. Chicago, M. & St. P. R. Co., supra; Marty v. Chicago, St. P., M. & O. R. Co., supra; De Kay v. Chicago, M. & St. P. R. Co., supra; Heffinger v. Minneapolis, L. & M. R. Co., supra; Magner v. Truesdale, supra; Delaney v. Milwaukee & St. P. R. Co., 33 Wis. 67; Kearney v. Chicago, M. & St. P. R. Co., 47 Wis. 144, 2 N. W. 82; Olsen v. Chicago, M. & St. P. R. Co., 81 Wis. 41, 50 N. W. 412, 1096; Gebhard v. Detroit, G. H. & M. R. Co., 79 Mich. 586, 44 N. W. 1045; Guta v. Lake Shore & M. S. R. Co., 81 Mich. 291, 45 N. W. 821; Gardner v. Detroit, L. & N. R. Co., 97 Mich. 240, 56 N. W. 603; Butts v. St. Louis, I. M. & S. R. Co., 98 Mo. 272, 11 S. W. 754; Elliott v. Chicago, M. & St. P. R. Co., 150 U. S. 245, 14 Sup. Ct. 85; McKinney v. Chicago & N. W. R. Co., 87 Wis. 282, 58 N. W. 386; Greenwood v. Philadelphia, W. & B. R. Co., 124 Pa. St. 572, 17 Atl. 188; Chicago & E. I. R. Co. v. Hedges, 118 Ind. 5, 20 N. E. 530; Fletcher v. Fitchburg R. Co., 149 Mass. 127, 21 N. E. 302; Murray v. Pontchartrain R. Co., 31 La. Ann. 490; Baxter v. Troy & B. R. Co., 41 N. Y. 502; Baltimore & O. R. Co. v. Whitacre, 35 Ohio St. 627; Ormsbee v. Boston & P. R. Co., 14 R. I. 102; Smith v. Wabash

R. Co., 141 Ind. 92, 40 N. E. 270; Cullen v. Delaware & H. C. R. Co., 113 N. Y. 667, 21 N. E. 716; Hoag v. New York C. & H. R. R. Co., 111 N. Y. 199, 18 N. E. 648; Brickell v. New York C. & H. R. R. Co., 120 N. Y. 290, 24 N. E. 449; Dyer v. Erie R. Co., 71 N. Y. 228; Crescent Township v. Anderson, 114 Pa. St. 643, 8 Atl. 379. Had the persons in the wagon all been killed, there could have been no recovery by their administrators. It would have been conclusively presumed that the exercise of ordinary care would have prevented the collision. Brown v. Milwaukee & St. P. R. Co., supra; Carney v. Chicago, St. P., M. & O. R. Co., supra; Harris v. Minneapolis & St. L. R. Co., supra; Magner v. Truesdale, supra; Haetsch v. Chicago & N. W. R. Co., 87 Wis. 304, 58 N. W. 393; Schofield v. Chicago, M. & St. P. R. Co., 114 U. S. 615, 5 Sup. Ct. 1125, citing Railway Co. v. Houston, 95 U. S. 697. What happened when the horses jumped, whether plaintiff then did all he could to prevent the accident or not, is immaterial, because it was his duty to see the train before getting so close as to be unable to prevent a collision. Schofield v. Chicago, M. & St. P. R. Co., supra; Haetsch v. Chicago & N. W. R. Co., supra; Austin v. New Jersey Steamboat Co., 43 N. Y. 75, 80.

Plaintiff was not excused from the duty to look and listen because he was a passenger. Hoag v. New York C. & H. R. R. Co., supra; Brickell v. New York C. & H. R. R. Co., supra; Dyer v. Erie R. Co., supra; Crescent Township v. Anderson, supra; Dean v. Pennsylvania R. Co., 129 Pa. St. 514, 18 Atl. 718; Brannen v. Kokomo Gravel-Road Co., 115 Ind. 115, 17 N. E. 202; Galveston, H. & S. A. R. Co. v. Kutac, 72 Tex. 643, 11 S. W. 127; Allyn v. Boston & A. R. Co., 105 Mass. 77; Beach, Contributory Negligence (2d Ed.) § 115.

*Welch & Welch* and *John W. Arctander*, for respondent.

The facts do not show contributory negligence as matter of law. Wright v. Cincinnati, N. O. & T. P. R. Co., 94 Ky. 114, 21 S. W. 581; Grostick v. Detroit, L. & N. R. Co., 90 Mich. 594, 51 N. W. 667, 677; Cleveland, C., C. & I. R. Co. v. Harrington, 131 Ind. 426, 30 N. E. 37, 40; Kellogg v. New York C. & H. R. R. Co., 79 N. Y. 73; Greany v. Long Island R. Co., 101 N. Y. 419, 5 N. E. 425, 427; Moore v. New York C. & H. R. R. Co. (Super. Buff.) 21 N. Y. Supp. 436, 439; Shaber

v. St. Paul, M. & M. R. Co., 28 Minn. 103, 105, 109, 9 N. W. 575; Kelly v. St. Paul, M. & M. R. Co., 29 Minn. 1, 4, 11 N. W. 67; Faber v. St. Paul, M. & M. R. Co., 29 Minn. 465, 468, 469, 13 N. W. 902; Loucks v. Chicago, M. & St. P. R. Co., 31 Minn. 526, 531, 532, 18 N. W. 651; Howard v. St. Paul, M. & M. R. Co., 32 Minn. 214, 216, 20 N. W. 93; Iltis v. Chicago, M. & St. P. R. Co., 40 Minn. 273, 280, 41 N. W. 1040; Hendrickson v. Great Northern R. Co., 49 Minn. 245, 51 N. W. 1044; Struck v. Chicago, M. & St. P. R. Co., 58 Minn. 298, 59 N. W. 1022. A prudent man's attention may be diverted so that he will fail to look and listen, and it is proper to leave it to the jury whether it was negligence so to fail. Shearman & Redfield, Negligence, § 90, n.; Barstow v. City of Berlin, 34 Wis. 357; Buswell, Personal Injuries, § 161; Continental Imp. Co. v. Stead, 95 U. S. 161; Piper v. Chicago, M. & St. P. R. Co., 77 Wis. 247, 46 N. W. 165; Chicago, R. I. & P. R. Co. v. Dignan, 56 Ill. 487; Illinois Cent. R. Co. v. Nowicki, 148 Ill. 29, 35 N. E. 358; Weller v. Chicago, M. & St. P. R. Co., 120 Mo. 635, 23 S. W. 1061; Grand Rapids & I. R. Co. v. Cox, 8 Ind. App. 29, 35 N. E. 183.

Plaintiff was a passenger, not responsible for the driver's negligence, and it was not his duty to look and listen. The driver's negligence could not be imputed to plaintiff. Little v. Hackett, 116 U. S. 366, 6 Sup. Ct. 391 (Hack); Robinson v. New York C. & H. R. R. Co., 66 N. Y. 11 (Buggy); Dyer v. Erie R. Co., 71 N. Y. 228 (Wagon); Masterson v. New York C. & H. R. R. Co., 84 N. Y. 247 (Wagon); McCallum v. Long Island R. Co., 38 Hun, 569 (Street Car); Bennett v. New Jersey R. & T. Co., 36 N. J. Law, 225 (Street Car); New York, L. E. & W. R. Co. v. Steinbrenner, 47 N. J. Law, 161 (Hack); Transfer Co. v. Kelly, 36 Ohio St. 86 (Street Car); O'Toole v. Pittsburgh & L. E. R. Co., 158 Pa. St. 99, 27 Atl. 737 (Street Car); Follman v. City of Mankato, 35 Minn. 522, 29 N. W. 317 (Buggy); Pitts v. New York, L. E. & W. R. Co., 29 N. Y. Supp. 871, 79 Hun, 546.

MITCHELL, J. This was an action to recover for personal injuries sustained by plaintiff in a collision between a farm wagon, on which he was riding, coming from the north, and one of defendant's trains coming from the west. The collision occurred about 10 o'clock in the morning of December 29, 1892, at the crossing of the Osseo road with defendant's main line near Minneapolis. The trial

resulted in a verdict for the plaintiff for $20,000, which the court, with plaintiff's consent, reduced to $14,500. This appeal is from an order denying defendant's motion for a new trial.

The negligence charged against the defendant was running its train at an unlawful and dangerous rate of speed and failing to give the required signals as it approached the crossing. It is not questioned but that the evidence was sufficient to justify the jury in finding that the defendant was guilty of negligence as alleged. Defendant's two contentions are (1) that the verdict is excessive, and (2) that it conclusively appears that the plaintiff himself was guilty of contributory negligence in failing to look and listen for trains as he approached the crossing.

1. The verdict, even as it now stands, is large, but it is clearly not so disproportionate to the nature and extent of plaintiff's injuries as to warrant us in setting it aside as excessive. Plaintiff was a young man, in his best years, and his injuries are both serious and permanent, leaving him badly maimed and deformed for life. Indeed, it would be no exaggeration to say that the evidence would justify the conclusion that he is practically a physical wreck.

2. On the occasion in question, the plaintiff was riding with one Pomeroy, who owned and was driving the team and wagon. Pomeroy had overtaken him on the highway, and invited him to ride. The vehicle was a farm wagon with a box or rack nearly three feet high. The team was a gentle one, and, in approaching the crossing, was traveling at the rate of about three miles an hour. Plaintiff had no control over the team, or over Pomeroy in its management. There was no relation of master and servant or of principal and agent between them, nor were they engaged in any joint enterprise. Plaintiff was simply taking a gratuitous ride upon the invitation of the owner and driver of the team. Pomeroy, who was driving, and a young man named Wentworth, sat on a spring seat, set on the bottom of the wagon box in the front left-hand corner, facing towards the west. Plaintiff, as they approached the crossing, was standing up near the center of the wagon on the right-hand side, and facing towards the team. The sight and hearing of all three were unimpaired. The road being bare of snow, the wagon made some noise, but not sufficient, as they testified, to interfere with their hearing. The morning was cold and frosty, with

a light wind from the east.    All three were familiar with the cross-ing, and plaintiff was aware of the fact that they were approaching it.    There was no evidence that Pomeroy was not a competent driver.    Neither was there any evidence that plaintiff knew or had reason to suppose that Pomeroy was not exercising proper care in looking and listening for approaching trains; certainly none that required a finding that he did.    There were no exceptional circum-stances that would have excused a traveler driving a team from looking for approaching trains.    Neither did anything exceptional occur to divert the attention of one whose duty it would otherwise have been to look.

Plaintiff's testimony, which was the only direct evidence of what he did, was that he did look to the west for approaching trains when he was about 225 feet from the crossing; that, seeing none, he turned and looked to the east, and, seeing none in that direction, he again looked to the west when he was about 150 feet from the crossing; that, still seeing no train in that direction, he again looked to the east, when his attention was attracted to smoke, which he thought perhaps might come from a locomotive, but which proved to be from the smokestack of a factory near Camden Place; that, becoming satisfied that this was not from a train, he turned around to again look to the west when he was about 25 feet from the track, when he discovered the approaching train within from 100 to 150 feet of the crossing, and going at a rate of from 40 to 50 miles an hour; that just at this time the horses made a jump or "lunge" forward; that Pomeroy tried to check them, but could not; that he (plaintiff) made an effort to get hold of the lines, but failed, and in an instant the collision occurred, and the next thing he knew was when he regained consciousness in the hospital.

It is quite apparent from the evidence that the horses were the first to discover the approach of the train, and that neither of the three men in the wagon discovered it until it was almost on the crossing, and the horses within a few feet of the railroad track, when, in their fright, they sprang forward on the track, almost immediately in front of the engine.    The highest rate of speed of the train tes-tified to was from 40 to 50 miles an hour.    The evidence consists largely of measurements and experiments made by the witness as

to the distances at which a train coming from the west could be seen from different points on the highway by a traveler coming from the north; also, of photographs illustrative and explanatory of this evidence.    It is impossible to state on paper, at least in any reasonable space, anything like the full probative force of the evidence. But a careful examination of it satisfies us that it amounts to a mathematical demonstration that had plaintiff, when at the distance of 150 feet from the crossing, looked west up the track for an approaching train, he would and must have seen the train, conceding that it was running at the highest rate of speed testified to; also, that the view westward up the track was unobstructed for so long a distance that if he had looked in this direction from any point within 150 feet of the crossing he would have seen the train.    Hence, although he testifies that he did look at the distance of 150 feet, it must be considered as conclusively established that he did not look, at least with the vigilance required of one driving a team, notwithstanding the "fog and mist" attempted to be raised for the purpose of showing that he might have looked and not seen the train.    Moreover, if he had been the driver of the team, even if he had looked at a distance of 150 feet, it would have been negligence for him not to look again, when, as in this case, there was nothing to prevent his doing so.

The evidence conclusively established negligence on the part of Pomeroy; and if the same kind and degree of negligence in "looking and listening" was required of plaintiff, in the exercise of reasonable care, as was required of Pomeroy, the driver, then plaintiff was, as a matter of law, guilty of contributory negligence, and the verdict cannot be sustained.

Defendant's contention is that the rule requiring a traveler on a highway, on approaching a railroad crossing, to "look and listen," so as to avoid danger from an approaching train, is, to its full extent, as applicable to one who is being carried in a vehicle owned and driven by another as it is to the driver, who has the control and management of the team, although the passenger has no control over the driver or the management of the team, and although no relation of principal or agent or master and servant exists between the two, so that the doctrine of respondeat superior would apply, or although they are not engaged in a joint enterprise, so as to

create a mutual responsibility for the acts of each other. We do not think that this is, or, on principle, ought to be, the law.

Negligence means merely the want of ordinary or reasonable care according to circumstances. This court, in common with most courts, has held, as a matter of law, that reasonable care requires a, traveler driving along a highway, when approaching a railroad crossing, to use his senses by looking and listening to discover and avoid danger from approaching trains. Under exceptional circumstances, there may be exceptions even to this rule. But the degree of care which an ordinarily prudent and cautious man usually exercises will depend somewhat upon the responsibility which is cast upon him. And it does not seem to us that, because reasonable care makes it the absolute duty of the person who has the control of the team and vehicle to look and listen, it necessarily follows that reasonable care imposes the same absolute duty upon one riding in the vehicle, but who is not intrusted with the control and management of the team, and has no control over the person who has. Of course, the fact that the passenger, who has no control over the team or driver, is not chargeable with the negligence of the driver, does not relieve him of the duty to exercise reasonable care to avoid danger. The fact that he is not responsible for the driver's negligence will not relieve him from responsibility for his own negligence. But the question is, what constitutes negligence, and what is the standard of reasonable care on the part of one situated as was this plaintiff?

If plaintiff had known that Pomeroy was an incompetent driver, or had known or had reason to believe that he was not performing his duty by looking for approaching trains, and had nevertheless neglected to look for himself, he would undoubtedly have been guilty of negligence. Or if he had in some way actively participated in Pomeroy's negligence he would have been negligent. But that is not this case, or at least the evidence does not establish it. We think that it would hardly occur to a man of ordinary prudence, when riding as a passenger with a competent driver, who he had no reason to suppose was neglecting his duty, that he was required, when approaching a railway crossing, to exercise the same degree of vigilance in looking and listening for approaching trains that he would if he himself had the control and management of the team. And our conclusion is that a court cannot hold, as a matter of law,

that a passenger having no control over the team or its management is guilty of negligence merely because he does not exercise the same degree of vigilance in "looking and listening" on approaching a railroad crossing which is required of the one having the control and management of the team. It is a matter of common knowledge that under ordinary circumstances passengers do largely rely on the driver, who has exclusive control and management of the team, exercising the required care when approaching a railway crossing, and we do not think that the courts are justified in adopting a hard and fast rule that they are guilty of negligence in doing so. Every case must depend largely upon its own particular facts.

The authorities on this precise point are not as numerous as might be expected. In many of the cases where the driver or person in charge was negligent, the injured passenger was within an inclosed carriage or car, and hence had no opportunity to look or listen for approaching trains. It is, however, a noticeable fact that in most of the cases which repudiate the doctrine of Thorogood v. Bryan, 8 C. B. 115, and hold that the negligence of the driver in failing to "look and listen" is not imputable to the passenger, it does not appear that the passenger himself looked and listened, and no suggestion is made that any such absolute duty devolved upon him.

Brickell v. New York C. & H. R. R. Co., 120 N. Y. 290, 24 N. E. 449, seems to go as far towards sustaining defendant's contention as any case in the books. But the facts of that case were peculiar. The plaintiff and the driver both occupied the same seat in a top buggy. As it was snowing and blowing, they raised the top, which was all inclosed except the front. This, with the snow and wind, rendered it more difficult either to see or hear approaching trains. This condition of things was necessarily known to plaintiff, who knew of the crossing. The court held that the evidence failed to show that plaintiff himself was free from negligence, which, under the rule in that state, he is bound to prove as part of his cause of action. This was decisive of the case, but the court proceeded, and further held that the evidence affirmatively and conclusively proved the actual existence of negligence of both the driver and the plaintiff. Upon the facts, this might well have been held upon the ground that the plaintiff himself actively participated in the negligence, and what the court said beyond this was not nec-

essary to the decision of the case.   That the trial courts of that state do not understand this case as laying down any such abso‑ lute rule as is sometimes supposed is evident from Crawford v. Dela‑ ware, L. & W. R. Co., 54 N. Y. Super. Ct. 262.   In that case the plaintiff sat on the back seat of a carriage, while her mistress sat on the front seat and drove.   The plaintiff neither looked nor lis‑ tened for approaching trains, and yet it was held that her negli‑ gence was a question for the jury.   Crescent Township v. Ander‑ son, 114 Pa. St. 643, 8 Atl. 379, and Dean v. Pennsylvania R. Co., 129 Pa. St. 514, 18 Atl. 718, are sometimes cited in support of the doc‑ trine now contended for by the defendant.   In the first of these cases the plaintiff himself actively participated and united in the negligent act.   And in O'Toole v. Pittsburgh & L. E. R. Co., 158 Pa. St. 99, 27 Atl. 737, the court says that in both of these cases "the decision was put on the ground that the negligence of the driver of the horse was apparent [to the plaintiff], and he was to some extent under the direction or control of the party injured."

Some courts make a distinction between private conveyances and public conveyances operated by common carriers, but it seems to us that any distinction based on this ground alone is wholly inde‑ fensible on principle.   Others seem to make the position of the passenger the test, holding, impliedly at least, that when he is seated away from the driver, by being separated from him by an in‑ closure, or by being inclosed in the carriage, is without opportunity to discover danger, or to inform the driver of it, the rule of "look‑ ing and listening" does not apply to the passenger, but that other‑ wise it does.   The presence or absence of these circumstances may be, and usually would be, material evidence upon the question of the passenger's negligence, but to hold as a matter of law, and as a rule of universal or even general application, that in their ab‑ sence the passenger is guilty of contributory negligence if he does not "look and listen," is in our opinion not justifiable upon either principle or reason.   The circumstantial evidence in this case may tend quite strongly to prove that plaintiff, as well as the driver, was negligent, but that was a question of fact for the jury.   A court would not be justified in holding that his negligence was conclu‑ sively established.   If the court in its charge instructed the jury too

strongly in defendant's favor on this question, it is not a matter of which it can complain.

Defendant's exceptions to the charge of the court are unavailing— First, because not seasonably taken before the jury retired; and, second, because they are, or at least most of them are, too general, being taken to parts of the charge involving two or more distinct propositions, some of which, at least, were unexceptionable, and the particular proposition objected to was not specified. We may, however, add that, while many of plaintiff's requests might have been properly refused on the ground that they were too long and involved to furnish much aid to the jury, yet we discover no prejudicial error in any of them. The assignments of error relating to the admission of evidence and to the refusal of the court to grant a new trial on the ground of newly-discovered evidence are, in our opinion, all without merit.

Having arrived at the conclusion that plaintiff's contributory negligence was a question for the jury, and that the evidence was sufficient to justify the verdict, the result is that the order appealed from must be affirmed.

COLLINS, J. (dissenting). I dissent. I do not regard the verdict, as reduced by the court, as excessive, for the plaintiff was permanently and very seriously crippled. But I am of the opinion that it would be almost impossible to find a case, if this be not one, in which a court could say, as a matter of law, that the negligence of a plaintiff was conclusively established by the evidence.

When instructing the jury, the court charged explicitly that although plaintiff was riding in Pomeroy's wagon upon invitation, and had no control over the team or driver, the duty was upon him to exercise the same care when approaching the crossing, and to be as diligent as to coming trains, as if he was driving his own team; and to this positive instruction plaintiff's counsel took no exception. That the jury disregarded this statement of the law is evident, for it must be conceded that had plaintiff been driving he could not have recovered. I do not claim that the charge of the court below on this point was an accurate statement of the law which should have governed the plaintiff's case, but, in any event, plaintiff's coun-

sel, when contending that the driver's palpable negligence should not be imputed to their client, requested that the jury be charged that if he was guilty of negligence or of want of ordinary care, which contributed to his injuries, he could not recover. That this proposition is abundantly supported by the authorities cannot be questioned. Beach, Contributory Negligence (2d Ed.) § 115, and citations; Allyn v. Boston & A. R. Co., 105 Mass. 77. See, also, other cases commented upon in the main opinion.

At the crossing in question, the defendant's tracks were on an embankment, or fill, 9 feet above the natural surface of the ground. This fill gradually decreased to the west, until it reached a cut about 1,450 feet from the crossing. For several hundred feet westerly, this cut was slight and not deep enough to conceal from view any part of a locomotive above the wheels. It was demonstrated to a certainty at the trial that when on the highway 170 feet north of the crossing the plaintiff and his companions could have seen a train, if they had looked, at any point within 1,500 feet. At 100 feet from the crossing the approaching train was plainly visible for more than 2,300 feet, and, as a matter of fact, when the plaintiff and his companions were 100 feet northerly of the crossing the train was within 1,500 feet thereof, upon the top of an embankment, and necessarily within plain sight of the most indifferent of travelers. The train was so noticeable that in the prevailing opinion it is stated, notwithstanding plaintiff's positive testimony that he did look and did not see, that "it must be considered as conclusively established" that plaintiff did not look for a coming train.

If it is conclusively established by the evidence that the plaintiff did not even look for the train which he knew was due about that time, at a crossing with which he was thoroughly familiar, standing up as he was, and having much better opportunities for looking and listening than had his companions, who were sitting on a seat so low that little more than their heads appeared above the sides of the wagon box, it seems to me that there can be no escape from the conclusion that, as a matter of law, not only did he fail to exercise ordinary care and prudence, such as an ordinarily prudent man would observe, but that he was extremely careless and negligent. To excuse him under such circumstances, to absolve him from the charge of contributory negligence, is to say that he who rides in a

private carriage at the invitation of the driver may close his eyes to well-known and imminent dangers, and escape all responsibility if accident results, unless he be aware that the driver is reckless or unskillful, or unless the passenger actually aids in causing the accident.

On the controlling facts, no difference can be pointed out between the case at bar and two of those mentioned in the principal opinion (Crescent Township v. Anderson, 114 Pa. St. 643, 8 Atl. 379, and Dean v. Pennsylvania R. Co., 129 Pa. St. 514, 18 Atl. 718); and, applying the rules there laid down, the plaintiff here had no cause of action. Finally, I note what is said concerning these two cases in the later one of O'Toole v. Pittsburgh & L. E. R. Co., 158 Pa. St. 99, 27 Atl. 737, which was a case of collision between an electric and a steam car, and quoted in the main opinion, to the effect that in each of those cases the decision was put on the ground that the negligence of the driver was apparent, and he was to some extent under the direction or control of the party injured. If in either of the cases referred to in this remark there was anything said which suggested that the party injured had any control over the driver, or that he pretended to direct him in the slightest degree, or that such fact was patent in determining either case, I am unable to find it after a most careful reading of the opinions. And, especially with reference to the Dean Case, this can also be said of the assertion that both of the decisions were, in part, put on the ground that the driver's negligence was apparent to the passenger. As I read the Pennsylvania cases, they were decided against the parties injured solely and expressly upon the ground that the plaintiffs, riding by invitation, or gratuitously, had contributed to their own injuries by failing to exercise ordinary care and prudence when approaching a well-known place of danger; and this without the slightest regard to the presence of the elements mentioned in the O'Toole Case, or reference to such elements.