EDWARD R. HILARY v. MINNEAPOLIS STREET RAILWAY COMPANY.[1]

June 12, 1908.

Nos. 15,639—(111).

**Evidence of Car's Speed.**

Under the circumstances of this case, it was not error to receive evidence of the speed of the street car for a distance of eight or ten blocks prior to its collision with respondent's wagon.

**Privileged Communication.**

Under the provisions of subdivision 4, § 4660, R. L. 1905, unless the privilege is waived, a physician cannot testify as to any information acquired by him in attending his patient. The privilege was not waived by the mere fact that the patient testified concerning his condition while receiving treatment.

**Same.**

Under the provisions of subdivision 2, § 4660, R. L. 1905, communications made to a clerk or employee of an attorney at law are privileged, if made in the course of professional duties.

Action in the district court for Hennepin county to recover $25,664 for personal injuries caused by a collision with defendant's street car. The case was tried before Brooks, J., and a jury which returned a verdict in favor of plaintiff for $10,000. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Jno. W. Arctander, N. M. Thygeson,* and *W. H. Bennett,* for appellant.

*Hall & Kolliner* and *W. E. Hewitt,* for respondent.

LEWIS, J.

Respondent was driving a one-horse grocery wagon on Fourth Street Southeast, Minneapolis, between six and seven o'clock p. m., December 14, 1906, and while between Fifth and Sixth avenues one of appellant's street cars struck the rear of the wagon, killing the horse, destroying the wagon, and hurling respondent to the ground, and so

[1] Reported in 116 N. W. 933.

crushing his right leg that amputation resulted, and otherwise injuring him.

1. It was not error to receive evidence as to the speed of the car at various points from the time it passed the viaduct at Fifteenth avenue until the collision occurred. It was admitted that the car was one of the largest used in the Minnetonka service, and that it had made a special trip from Lake street to Como Avenue Southeast, and was returning from Como avenue, labelled "To Station Only," which was some seven or eight blocks distant from the point of the accident, and did not stop to take on passengers. Several witnesses stationed at different points from Fifteenth to Fifth avenues testified that the car was passing at a very high rate of speed. The objection to this evidence was that it tended to prove the charge of negligence claimed by evidence of negligence at other points having no direct relation to each other. The evidence was received, apparently upon the ground that it had some bearing upon the question of contributory negligence. However, considering that the car was making a special trip to the station, and did not stop at crossings to take on passengers, and had a clear run from Fifteenth avenue down to Central avenue, a distance of some fifteen blocks, we think it was competent to prove the speed of the car during all of that distance, as bearing directly upon the speed and control of the car at the time of the accident.

2. On cross-examination, respondent testified that he had some trouble with his right ear about a year before the accident; that he had been treated by a specialist, Dr. Erickson; that when he first went to him he could not hear a watch tick with his right ear, unless it was put up against the ear; but that he had been helped; and at the time of the accident could hear a car a couple of blocks away. Appellant called Dr. Erickson, and offered to prove by him that the last time respondent was at his office he examined his hearing, and found he could not hear the ticking of a watch with his right ear unless it was brought in contact with the ear bone, and that with his left ear he could hear a watch tick a distance of from five to six inches; and that the condition of respondent's hearing was practically the same as when he first consulted Dr. Erickson. The offer was objected to and sustained upon the ground that it was privileged under the statute. Mr. Wigmore gives some excellent reasons why the statute

104 M.—28

might be modified. Wigmore, Ev. §§ 2380–2389. But the statute has been of long standing, has generally been liberally construed, and, although there seem to be strong reasons why it might be modified so as to permit physicians to testify upon such occasions as this, the wisdom of making a change should be left to the legislature. It is true that under some circumstances a party may have waived the privilege, but no such circumstances are presented in this case.

3. Respondent testified that between Eighth and Ninth avenues, on Fourth street, he turned onto the right track, the wheels on the track and the horse in the center, and drove along until he came to the Sixth avenue crossing, when he turned off a little, so that the two right-hand wheels of his wagon were outside the track, and the two left-hand wheels were inside the right-hand rail, and the horse near that rail, and he was in this position when the collision took place. Appellant called as a witness George Clark, who testified that he was a law clerk in the office of Albert E. Clark, and that he was engaged by the attorney to look up evidence, and by this witness offered to prove that shortly after the accident, while respondent was in the hospital, he made a statement to the witness as to the manner in which he was driving and how he came to be struck by the car, which testimony materially differed from the statement made by respondent on the stand. The testimony of Clark was objected to upon the ground that it was a privileged conversation between respondent and his attorney, and the objection was sustained.

The statute (G. S. 1878, c. 73, § 10, subd. 2) was originally as follows: "An attorney cannot, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon, in the course of professional duty." The amendment (chapter 31, p. 150, Laws 1895), added the words: "Nor can any employé of such attorney be examined as to such communication or advice, without the client's consent." By the amendment it was the intention of the legislature to include within the privilege all communications of a professional nature made by the client to a clerk or employee of the attorney, without regard to whether the attorney was present or not. The amendment takes note of the fact that an attorney at law transacts much business of a confidential nature through clerks and trusted employees, and the purpose of the statute

would be rendered largely nugatory if it were made applicable to com-- munications made solely to the attorney himself, in the presence of such clerks, etc. Mr. Wigmore discusses this question at section 2301, et seq., and states that under such statutes, without such an amendment, the privilege protects communications made to clerks and other agents.

We do not deem it necessary to refer to the other assignments of error.

Affirmed.