LUCILLE DOLL v. HENRY A. SCANDRETT AND OTHERS.[1]

December 3, 1937.

No. 31,362.

[1]Reported in 276 N. W. 281.

F. W. Root, C. O. Newcomb, A. C. Erdall, and Murphy, Johanson & Winter, for appellants.

C. J. Benson and J. J. Purcell, for respondent.

STONE, JUSTICE.

Action for damages arising out of a collision between an automobile in which plaintiff was riding as a guest passenger and one of defendants' trains. There was a verdict in plaintiff's favor, and the appeal is taken from an order denying defendants' motion for judgment notwithstanding the verdict or for a new trial.

The accident occurred about three o'clock in the afternoon of December 6, 1935, at a railroad crossing located at the westerly side of the village of Collis. The sedan in which plaintiff and three other persons were riding approached the crossing from the east and was struck by one of defendants' trains coming from the north.

For a distance of about 50 feet east of the crossing the view to the north was unobstructed although there was testimony that visibility was affected by reason of a mist and fog. The wind was blowing from the northwest, and the windows on the north side of the automobile were frosted so as further to interfere with plaintiff's vision to the north.

318

The complaint does not allege the specific acts of negligence with which defendants were charged, but the proof offered by plaintiff was to the effect that defendants violated the provisions of 2 Mason Minn. St. 1927, § 10263, in failing to ring the bell and sound the whistle for the crossing where the accident occurred. Defendants denied negligence and contended that plaintiff's injuries were due to her own negligence and that of the driver of the car.

■ Three occupants of the automobile testified that the statutory signals were not given. True, their statements at the trial with regard to this matter were at variance with previous statements given to representatives of the railroad company, but the credibility of their testimony was for the jury. One Willette, a witness for plaintiff, who resided near the crossing and saw the collision, testified that the whistle was not blown nor the bell rung for this crossing although he admitted that the whistle was sounded for a crossing 800 feet north of the one at which the accident occurred. Defendants produced several witnesses who testified positively that the signals were given.

The evidence would have supported a finding that the whistle was sounded and the bell rung, but such finding is not required as a matter of law. The question was properly for the jury. Setosky v. Duluth, S. S. & A. Ry. Co. 173 Minn. 7, 216 N. W. 245; Fink v. N. P. Ry. Co. 162 Minn. 365, 203 N. W. 47.

■ Plaintiff testified, and was corroborated by the testimony of the other occupants of the automobile, that the driver stopped the car some 25 feet east of the track. She also testified that she looked to the north but did not see the train approaching. Taking into consideration the climatic conditions and the frosted windows of the vehicle, which must have materially interfered with plaintiff's view, it appears to us that the situation in which plaintiff found herself was quite distinguishable from those in any of the cases relied upon by defendants. It was for the jury to determine whether, under existing conditions, plaintiff was negligent in failing to see the approaching train and to warn the driver of the automobile in sufficient time to prevent the accident. Howe v. M. St. P. & S. S.

M. Ry. Co. 62 Minn. 71, 64 N. W. 102, 30 L. R. A. 684, 54 A. S. R. 616; Hollister v. Hines, 150 Minn. 185, 184 N. W. 856. .

■ It is next urged that the verdict is excessive and is founded in part upon testimony pertaining to ailments not shown to be associated with any injury resulting from the collision. At the trial plaintiff testified to certain disabilities, which if shown to have proximately resulted from the accident would have justified an award of substantial damages.

Two months after her discharge from the hospital where she was taken after the accident, plaintiff returned for an examination by her attending physicians. Pus was discovered in her urine, a condition which did not exist during the week following her injury. Her physician attributed the pus to an infection of the kidney. Nowhere in the record do we find any testimony of a medical nature attributing plaintiff's disability resulting from the kidney condition to the injuries she received in the accident, nor any testimony from which the jury could have found a causal connection. We believe that permitting the jury to hear an extended discussion of an existing condition which they might infer resulted from the accident without medical testimony to support such inference was prejudicial.

Plaintiff, as a basis for sustaining the verdict, contends that aside from the objectionable testimony plaintiff made a showing that would justify an award in the amount received, and that under the court's instruction the jury was prohibited from awarding damages other than those which were the proximate result of defendants' negligence. The difficulty lies in the fact that there is no way of knowing what part of the amount awarded was based upon competent evidence and what part was based upon incompetent evidence. Because of this fatal defect, we feel that defendants are entitled to a new trial on the question of damages. Error in the admission of evidence is ground for a new trial if it is obvious from a consideration of the whole case that substantial prejudice resulted to the adverse party. Salo v. Duluth & I. R. R. Co. 121 Minn. 78, 140 N. W. 188; 5 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934, 1937) § 7180.

■ Plaintiff was treated at the Oliver Clinic in Graceville. Dr. McKenna, a member of that clinic as witness for plaintiff, testified at length as to her condition and treatment. Defendants called Dr. Oliver, an associate of Dr. McKenna, and offered his conclusions concerning plaintiff's injuries, based upon examinations made with Dr. McKenna. Objection by plaintiff on the ground of privilege was sustained. That ruling is assigned as error.

Plaintiff testified in her own behalf as to her injuries and the results. She also called one of two attending physicians as a witness and disclosed by him the conditions found upon examination. Thereby, defendants argue, she waived the privilege afforded her by 2 Mason Minn. St. 1927, § 9814(4), against disclosure by physicians. The precise question has never been decided by this court. We have held that the privilege afforded by the statute is not waived by the bringing of an action (unless it be against the physician himself for malpractice), or by a patient himself testifying concerning injuries sustained and the treatment received. Polin v. St. Paul U. D. Co. 159 Minn. 410, 199 N. W. 87; Burke v. C. & N. W. Ry. Co. 131 Minn. 209, 154 N. W. 960; Marfia v. G. N. Ry. Co. 124 Minn. 466; 145 N. W. 385; McAllister v. St. Paul City Ry. Co. 105 Minn. 1, 116 N. W. 917; Hilary v. Minneapolis St. Ry. Co. 104 Minn. 432, 116 N. W. 933.

Some courts hold the privilege not waived when a patient discloses through an attending physician the results of his examination, so as to permit an adverse party without the consent of the patient to call another physician who was present at the examination to relate the results of his findings and conclusions. Jones v. City of Caldwell, 20 Idaho, 5, 116 P. 110, 48 L.R.A.(N.S.) 119; Brookhaven Lbr. & Mfg. Co. v. Adams, 132 Miss. 689, 97 So. 482; U. S. F. & G. Co. v. Hood, 124 Miss. 548, 87 So. 115, 15 A. L. R. 605.

Other courts hold the contrary. Chaffee v. Kaufman, 113 Kan. 254, 214 P. 618; Schlarb v. Henderson (Ind.), 4 N. E. (2d) 205; Morris v. New York, O. & W. Ry. Co. 148 N. Y. 88, 42 N. E. 410, 51 A. S. R. 675; Cretney v. Woodmen Accident Co. 196 Wis. 29, 219 N. W. 448, 62 A. L. R. 675; 5 Jones, Evidence, p. 4188; Abbott, Facts (5 ed.) p. 1277; Steinberg v. New York L. Ins. Co. 263

N. Y. 45, 188 N. E. 152, 90 A. L. R. 642, 646, note. In Cretney v. Woodmen Accident Co. 196 Wis. 29, 36, 219 N. W. 448, 450, 62 A. L. R. 675, the question is answered, tersely, in these words:

"When consent is given for the disclosure by one physician the reason for the statute no longer exists, and the waiver is a waiver of the whole privilege and not a consent to the introduction of the testimony of designated witnesses. Maine v. Maryland Cas. Co. 172 Wis. 350, 178 N. W. 749, 15 A. L. R. 1536."

Adopting the rule of the latter cases, we hold that where the examination and treatment of a patient by two or more physicians or surgeons is a unitary affair and the patient permits one of them to testify concerning the whole subject matter, the privilege afforded by the statute is thereby waived.

That conclusion involves nothing whatever of statutory construction. It goes no further than to affirm that the stated conduct of the patient amounts to a waiver of his privilege, which is that of the patient and not the physician. To whatever extent possible, judges should take care that it is not made an instrument for cheating justice. Olson v. Court of Honor, 100 Minn. 117, 123, 110 N. W. 374, 8 L.R.A. (N.S.) 521, 117 A. S. R. 676, 10 Ann. Cas. 622.

It is highly important if not determinative of the present inquiry that the subject matter of the privilege consists of the disclosures made orally by the patient plus the condition found by the physician in the course of his examination and treatment. Hence, if two or more physicians or surgeons participate in one examination or treatment, or one course of examination and treatment, and the patient later makes one of them his own witness to testify fully about the whole matter, the patient has thereby himself removed the statutory lid and so has waived the right to keep it on. The subject matter having been so opened to public scrutiny by the patient himself through the lips of one of his attending physicians, he is in no position to object on the ground of privilege if the other be called as a witness.

That conclusion comes entirely apart from the unfairness of permitting a litigant, so inclined, to let triers of fact look at his con-

dition through the testimony of one of the two physicians while simultaneously preventing their viewing it also through the testimony of the other.

It follows that the order under review must be reversed and the case remanded for a new trial, which, however, will be confined to the issue of the amount of plaintiff's damage. The other issues will be considered as settled by the verdict at the first trial. Such error as we have found concerns the issue of damage alone; hence there is no occasion for retrying any other.

So ordered.

GALLAGHER, CHIEF JUSTICE (dissenting in part).

I agree that on account of error referred to in subd. 3 of the opinion a new trial on the question of damages is necessary. I do not agree that a patient by permitting one of two or more attending physicians or surgeons to testify as to the whole matter waives the privilege afforded by 2 Mason Minn. St. 1927, § 9814, so as to permit others to testify in behalf of the adverse party even though the examination and treatment of such patient is a unitary affair.

That the patient does not waive the privilege by testifying concerning the injury sustained and the treatment received so as to permit an attending physician also to testify has repeatedly been decided by this court. Polin v. St. Paul U. D. Co. 159 Minn. 410, 199 N. W. 87; Marfia v. G. N. Ry. Co. 124 Minn. 466, 145 N. W. 385; McAllister v. St. Paul City Ry. Co. 105 Minn. 1, 116 N. W. 917; Hilary v. Minneapolis St. Ry. Co. 104 Minn. 432, 116 N. W. 933.

In Marfia v. G. N. Ry. Co. the court said (124 Minn. 470):

"In support of its proposition as to waiver defendant relies largely upon Wigmore on Evidence. This erudite author discusses the underlying principles which govern such matters, and, in his usual trenchant style, asserts that the law ought to be substantially as contended for by defendant, but frankly admits that such is not the law at the present time. We give much weight to his masterly work, but must apply the law as we find it and leave the modification of the statute to the lawmaking power. As said in Hilary v. Minneapolis Street Ry. Co. supra: 'Mr. Wigmore gives some excel-

lent reasons why the statute might be modified. Wigmore, Ev. §§ 2380-2389. But the statute has been of long standing, has generally been liberally construed, and, although there seem to be strong reasons why it might be modified so as to permit physicians to testify upon such occasions as this, the wisdom of making a change should be left to the legislature.' "

The question was before the court in Polin v. St. Paul U. D. Co. 159 Minn. 410, 412, 199 N. W. 87, and the argument now used to persuade us to throw down the bars was rejected. There this court said:

"Defendants contend that the court erred in excluding the testimony of Doctor Kelly, the physician who treated plaintiff for his injuries. Section 8375, G. S. 1913, forbids a physician or surgeon from disclosing, without the consent of his patient, any information which he acquired while acting in his professional capacity, and which was necessary to enable him to act in that capacity. Defendants insist that plaintiff waived the right to invoke this statute by bringing an action to recover damages for the injuries treated by the physician, and by testifying concerning such injuries and the treatment given. The legislature has not seen fit to say that such acts shall operate as a waiver. The authorities are not in harmony. They are collated in notes found in 13 Ann. Cas. 945, and Ann. Cas. 1915A, 438. This court, in accordance with the weight of authority, has adopted the rule that bringing an action, unless it be against the physician himself for malpractice, or testifying concerning the injuries sustained and the treatment received, unless such testimony relates to communications made to the physician or questions the propriety of his treatment, is not a waiver of the privilege." (Citing cases.)

I can see no reason why a distinction should be made between the effect of a disclosure by a patient and a similar disclosure by an attending physician. Under the authorities referred to, if a patient disclosed in her testimony that a miscarriage followed an accident her attending physician would not be permitted to testify, over her objection, in behalf of the adverse party concerning the miscar-

riage. Why, then, should one of two attending physicians be permitted to testify in behalf of the adverse party, over a patient's objection, if the disclosure was made in court by the other attending physician, with her consent, rather than by the patient herself? Clearly, an examination of one of two or more physicians who attended the patient at different times does not operate as a waiver of the privilege as to the others, although they attended the patient for the same ailment. 46 L.R.A.(N.S.) 1108; Epstein v. Pennsylvania R. Co. 250 Mo. 1, 156 S. W. 699, 48 L.R.A.(N.S.) 394, and note, Ann. Cas. 1915A, 423; notes, 13 Ann. Cas. 947; Ann. Cas. 1915A, 440; notes, 62 A. L. R. 684; 90 A. L. R. 646. Assuming that a patient consulted Dr. A and, not being satisfied with the result of the consultation, one hour later consulted Dr. B regarding the same ailment. Why should the bar of the statute, in the event Dr. B testified in patient's behalf, prevent Dr. A from testifying without the patient's consent and not prevent such testimony if the examination was made jointly with Dr. B and disclosed the same thing?

Courts of other states have held that the privilege is not waived. The ground assigned for such position is that the privilege extends to the individual witness and not to the consultation or transaction in which the physician was engaged. Jones v. City of Caldwell, 20 Idaho, 5, 116 P. 110, 115, 48 L.R.A.(N.S.) 119; Brookhaven Lbr. & Mfg. Co. v. Adams, 132 Miss. 689, 97 So. 484; U. S. F. & G. Co. v. Hood, 124 Miss. 548, 87 So. 115, 119, 15 A. L. R. 605; Mellor v. Missouri P. Ry. Co. 105 Mo. 455, 16 S. W. 849, 10 L. R. A. 36; Penn Mut. L. Ins. Co. v. Wiler, 100 Ind. 92, 50 Am. R. 769; note, 48 L.R.A.(N.S.) 400.

In U. S. F. & G. Co. v. Hood [124 Miss. 571], the court said:

"One of the reasons that may have prompted the legislature in the enactment of the statute was the evil of commercializing knowledge so obtained by certain experts, so called, and by physicians employed by one party to wait upon and minister to parties which such employer had injured. But, whatever may have been the reason for the enactment of the statute, the statute expressly prohibits a physician from testifying without the consent of the patient."

I am impressed by what was said on the question under consideration by the Idaho court in Jones v. City of Caldwell [20 Idaho, 17]:

"We conclude that the decided weight of authority is in favor of the view that a waiver of the privilege as to one physician does not waive the privilege as to any other physician. It is also very clear that our statute forbids and prohibits the examination of a physician without the consent of the patient, and this privilege extends to the *individual witness* and not to the *consultation* or *transaction* in which he was a physician. In other words, each individual physician is a witness within the meaning of this statute, rather than a number of physicians who may be present or participate in a consultation, being treated as one witness, as appears to be done by Prof. Wigmore. As we view it, the plaintiff did not waive the privilege so far as Dr. Stewart is concerned, by calling Dr. Miller to testify for her, and, if the provisions of said § 5958 resulted in the suppression of truth, that is a matter for legislative consideration. Counsel for defendant contends that Dr. Stewart was called to testify as an expert and that his evidence should have been given to the jury for that reason. By calling a physician as an expert, the provisions of said § 5958 cannot be evaded and the witness permitted to base his opinions on information acquired while attending the patient. If that were permitted, the provisions of said statute would be without force or effect.

"We therefore conclude that the plaintiff did not waive the privilege so far as Dr. Stewart is concerned by calling Dr. Miller as a witness."

Courts adopting the waiver rule do so upon the theory that when consent is given for the disclosure by one physician the reason for the statute no longer exists and the waiver is operative as to the whole privilege. Maine v. Maryland Cas. Co. 172 Wis. 350, 178 N. W. 749, 15 A. L. R. 1536.

Our statute is plain and drastic. It reads:

"A licensed physician or surgeon shall not, without the consent of his patient, be allowed to disclose any information or any opinion based thereon which he acquired in attending the patient in a pro-

fessional capacity and which was necessary to enable him to act in that capacity." 2 Mason Minn. St. 1927, § 9814(4).

While a patient may expressly waive the privilege afforded by the statute or may impliedly waive it by failing to object to the offered testimony, it seems to me that we are going too far in holding that the privilege may be waived in the manner referred to in the majority opinion. The statute was enacted for the benefit of the patient. If it needs correction, it should be corrected by the legislature, not by the court. More harm than good will result from holding that the privilege afforded by the statute may be waived in the manner indicated. This case illustrates the result of such a holding. A patient goes to a clinic to consult an individual physician. While there other physicians are called into consultation. Perhaps the one called in is at the time the duly appointed physician of some individual or corporation whose interests are adverse to the interests of the patient. Later litigation follows. Necessarily, he is serving two masters, not only in making the examination but in arriving at his conclusions as well. To my mind the practice seems dangerous, and I do not believe it should be permitted by giving the statute the construction contended for.

JULIUS J. OLSON, JUSTICE (dissenting).

I concur in the dissent of Mr. Chief Justice Gallagher, because, in the language of the court in Jones v. City of Caldwell [20 Idaho, 17] "each individual physician is a witness within the meaning" of our statute.

PETERSON, JUSTICE (dissenting).

I concur in the dissent of Mr. Chief Justice Gallagher.