## CITIZENS STREET RAILROAD COMPANY ET AL. *v.* SHEPHERD.

[No. 4,163.   Filed December 18, 1902.]

PLEADING.—*Complaint.*—*Omission of Name of Court.*—Where a complaint contains in its title the names of the parties and the state and county in which the action is brought, an objection that it does not contain the name of the court is to the form rather than the substance and is not available on appeal.  *pp. 194, 195.*

PARTIES.—*Street Railroads.*—*Personal Injuries.*—*Transfer of Company.*— A complaint for personal injuries against a street railroad company and its successor to whom all of the property had been transferred after the alleged injury, is not demurrable on the ground that such transfer only gave the right to enforce judgments against the original company against its property in the hands of its successor, as the complaint shows a cause of action against the latter and the manner of enforcing the judgment does not arise upon the demurrer.  *p. 195.*

APPEAL AND ERROR.—*Modified Instructions.*—*Exceptions.*—Alleged error of court in modifying requested instructions and giving the same as modified can only be saved by motion for new trial.  *pp. 197, 198.*

NEGLIGENCE.—*Personal Injuries.*—*Instructions.*—*Street Railroads.*—No error was committed in instructing the jury in an action against a street railroad company for personal injuries received by a woman in alighting from the car with a child in her arms that "The measure of care against accident which one must take to avoid responsibility is that which a person of ordinary prudence and caution would use if his interests were to be affected and the whole risk were his own," where the jury was informed by other instructions that negligence was the failure to do what a reasonable and prudent person would ordinarily do under the circumstances of the situation; and that a failure to observe the degree of care which the circumstances justly demand, whereby an injury is received, is negligence.  *p. 198.*

EVIDENCE.—*Privileged Communications.*—*Physician and Patient.*—*Personal Injuries.*—An objection was properly sustained to a question propounded to a witness on cross-examination, in an action for her personal injury, which called for an alleged conversation had by the witness with a physician, after the injury, relative to a contemplated abortion on the part of the witness, upon the advice of her attorney, on the ground that such conversation was privileged.  Roby, C. J., and Henley, J., dissent.  *pp. 198–203.*

From Johnson Circuit Court;  *W. J. Buckingham,* Judge.

Action by Charles Shepherd against the Citizens Street Railroad Company and another. From a judgment for plaintiff, defendants appeal. *Affirmed.*

*F. Winter, Clarence Winter, J. S. Duncan, W. N. Harding, R. M. Miller* and *H. C. Barnett,* for appellants.

*W. J. Beckett, W. A. Johnson, B. K. Elliott, W. F. Elliott* and *F. L. Littleton,* for appellee.

COMSTOCK, J.—This action was brought by the appellee in the Marion Superior Court to recover damages for loss of services of his wife, who had been injured in attempting to alight from a car operated by appellant the Citizens Street Railroad Company by reason of the alleged starting of said car while said appellant's conductor was standing upon the dress skirt of appellee's wife, which skirt was still upon the step of the car after she had reached the ground. Upon change of venue the cause was tried in the Johnson Circuit Court, where a verdict was returned in favor of appellee, and judgment rendered thereon for $5,000.

The action of the court in overruling the separate demurrer and in overruling the separate motion for a new trial of each of the appellants is assigned as error.

It is contended that the complaint is bad as against both appellants because it fails to specify the name of the court in which the action is brought. Section 341 Burns 1901, §338 Horner 1901, provides that "The complaint shall contain—(1) The title of the cause, specifying the name of the court and county in which the action is brought, and the names of the parties to the action, plaintiff and defendant." The complaint before us contains the state and county, and the names of the parties, but does not include the court. It does not therefore strictly fill the requirements of the statute. But the objection is to form rather than substance. This defect could not have affected the substantial rights of the defendants, and ought not to avail appellants upon appeal. §398 R. S. 1881; *Brandis* v. *Grissom,* 26

Ind. App. 661; *McLoran* v. *Morgan,* 37 Ark. 148; *Robinson* v. *Peru Plow, etc., Co.,* 1 Okla. 140, 31 Pac. 988; *Van Namee* v. *People,* 9 IIow. Pr. 198; *Van Benthuysen* v. *Stevens,* 14 How Pr. 70; Phillips, Code Pl., §170.

It is urged that the separate demurrer of the Indianapolis Street Railway Company to the complaint should have been sustained. The complaint avers that the accident happened to Mrs. Shepherd while a passenger on one of the cars of appellant Citizens Street Railroad Company while being operated by said corporation upon its line of railroad. Appellant Indianapolis Street Railway Company is made a party and is sought to be held liable by the following averments: "That since the said 7th day of November, 1897, said defendant the Citizens Street Railroad Company has sold and transferred all its properties, both real and personal, including its franchises in said streets, to the said defendant the Indianapolis Street Railway Company; that pursuant to the law under which the sale and transfer of said property of the defendant the Citizens Street Railroad Company was made to the said defendant the Indianapolis Street Railway Company all rights of creditors and liabilities for damages, and all liens or encumbrances upon the property or franchises sold or transferred from the first-named defendant to the said second-named defendant, should continue unimpaired, and might be enforced against such property and franchises the same as if said sale or transfer had not been made." The complaint shows that the Indianapolis Street Railway Company had no connection with the accident. The averments with reference to the transfer of the rights, properties, etc., of the Citizens Street Railroad Company it is claimed only gave appellee the right to enforce any judgment he might recover against the Citizens Street Railroad Company against the property of that company in the hands of the Indianapolis Street Railway Company.

It is also claimed that such cause of action would be *in rem,* and enforceable in equity, with the incidental right of trial by the court. The action brought is *in personam,* and enforceable at law. The judgment demanded and rendered is a personal judgment. A complaint in a personal action which states a cause of action *in rem* does not state facts sufficient to constitute a cause of action. *Marshall* v. *Stewart,* 65 Ind. 243, and *Lipperd* v. *Edwards,* 39 Ind. 165, are cited. We do not see that these cases sustain the position. The complaint shows a cause of action against the Indianapolis Street Railway Company. The manner of enforcing this judgment does not arise upon the demurrer. A complaint is good against a demurrer for want of facts which entitles plaintiff to any relief, although not all, nor the specific relief sought. No motion was made to modify the judgment.

Appellants insist that the verdict of the jury is not sustained by sufficient evidence. It is pointed out that the allegations of the complaint are: "That said plaintiff's said wife attempted to alight from said car at said point; but plaintiff says that while his wife was in the act of alighting from said car, and before she was safe upon the ground and away from said car, defendant's servant, said conductor, negligently stepped upon the plaintiff's dress upon the step of said car, and while in said position upon said step defendant's said servant negligently started said car, etc." Other words following correct the manifest error in the use of the words plaintiff's dress, and charge the stepping of the conductor upon the dress of the plaintiff's (appellee's) wife. Counsel claim that the complaint charges that the conductor stepped upon the dress of appellee's wife, and then started the car; that the cause of the accident was the starting of the car, for if the car had not started she would not have been thrown; that on the other hand the fact that the conductor standing on her skirt made the act of starting the car, which would otherwise have been harmless, negli-

Citizens St. R. Co. v. Shepherd.

gent.  It is claimed, therefore, that it is necessary to prove that the starting of the car caused the fall, and also that the starting of the car was negligent by reason of the conductor standing upon her dress.

It is claimed that the evidence wholly fails to support the theory of the complaint, but does show that the car was started before the conductor stepped on the ' dress at all. Whether the conductor stepped on the dress before or just as the car was started or immediately after the car was started we do not deem of controlling importance.  Each act was alleged to have been done negligently; but conceding, for the sake of the argument, that the evidence should show that the conductor stepped on the dress before the car started, that theory is not without evidence to support it.  We quote from the direct examination of the appellee's wife.  "Q. What, if anything, did the car do ?  A.  It started and threw me.  Q.  You may state how it threw you,—what threw you ?  A.  When the car started he was on my dress, and it just threw me.  Q.  What threw you ?  A.  His weight and the car starting naturally would drag a person down." The last answer fairly states the situation.  The acts of stepping on the skirt and of starting the car were probably nearly simultaneous, but there is evidence that when the car was started the conductor was standing on the woman's skirt.

The appellants contend that the refusal of the court to give instructions number three, four, eleven, twelve, and fourteen requested by them was error.  The bill of exceptions shows that these instructions were modified, and given as modified.  Counsel for appellee insist that there was no error upon any ground in this action of the court, but they contend particularly that the question is not presented, for the reason that inasmuch as the instructions requested were modified, and given as modified, this action of the court should have been made a ground for a new trial.  This was not done.  The Supreme Court has held that such question

is only saved by a motion for a new trial. *Wallace* v. *Goff,* 71 Ind. 292.

Instruction fourteen given by the court of its own motion and excepted to by appellant is as follows: "The measure of care against accident which one must take to avoid responsibility is that which a person of ordinary prudence and caution would use if his interests were to be affected and the whole risk were his own." It is claimed that this instruction is too general, and errs in not limiting the care to be exercised by the ordinarily prudent person in the particular circumstances of the case. The rule for the measure of care under consideration is that care which a person of ordinary prudence and caution similarly situated would use. The care must be in proportion to the danger to be avoided. *Toledo, etc., R. Co.* v. *Goddard,* 25 Ind. 185.

It is pointed out that the evidence shows that appellee's wife was pregnant, and was carrying a young baby in her arms at the time of the accident, and that the instruction laid upon appellee's wife a much lighter degree of care than she was bound to exercise. The instruction put the entire risk upon appellee's wife, this was not lessening the care required of her. In other instructions given by the court the jury were informed that negligence was the failure to do what a reasonable and prudent person would ordinarily do under the circumstances of the situation, and that a failure to observe the degree of care which the circumstances justly demand, whereby an injury is received, is negligence. If we admit that the instruction complained of is too general, still it could not have misled the jury, taken in connection with other instructions given.

On the subject of the injuries to Mrs. Shepherd, appellee introduced doctors Benham and Haggard. In her examination in chief Mrs. Shepherd, the injured party, testified only as to the manner in which she received her injury. She was not questioned as to her physical condition before or after the accident, nor what physicians had treated her.

Upon cross-examination, over the objection of plaintiff, she testified as to the time when and the physicians by whom she was treated for her alleged injury. Dr. McShane was one of the physicians named, and, over the objection of plaintiff, she was asked whether she had not made certain statements to him as to her condition. She denied having made the statements specified. Upon reëxamination Mrs. Shepherd testified as to her condition before and after the accident. Upon re-cross-examination she testified in detail as to her condition from the night of November 7, 1897, the night of the accident, throughout the entire month of November. She testified that during that entire month she suffered severely in the abdomen and back, and the veins in her legs were very bad; that she got bandages for them in November right away after Dr. Benham was there. Her nervousness was present in November and December. Her condition, as described on her re-direct examination continued from the night of the 7th of November until after the birth of her child. Dr. Benham was with her within a week after the accident. Her next physician was Dr. McShane, who visited her during December. Dr. Ferguson came with him once.

The defendant then asked the witness Lillie M. Shepherd if Dr. McShane made an examination of her; whether she detailed to him her various symptoms from the evening of November 7th to that time; whether she did not state to him that she was not suffering from any symptoms at that time that she had not suffered from during some of her former pregnancies; whether it was not true that she said nothing to either McShane or Ferguson as to her suffering in any way from any hurt, trouble, or disease; and if, in answer to questions by said McShane and Ferguson, she had not said that she had no aches in her back, and felt no bearing-down pains. The following question was also propounded: "I will ask you, Mrs. Shepherd, if, on the 15th day of December, 1897, at your residence on Sherman ave-

nue, in Cerealine town, in Marion county, Indiana, during the time that Dr. Ferguson was visiting you as you have described, if you didn't make this statement to him,—didn't you say to him that your lawyer, Mr. Beckett, had told you that you could make a great deal better case if you had an abortion; that you consented, but told him you knew no doctor; that he told you that he would send you a doctor; that when the doctor came he told you you were a good strong woman, and could have an abortion without it hurting you; that the doctor said he would leave the medicine at Mr. Beckett's office; that your husband went to the office several times for it, but could find no one who knew anything about it; and didn't the doctor then say to you that there was a great danger in having an abortion as it might cause your death, and didn't you then state that you wanted to do right, but that you were poor and the temptation was very great; and didn't you in that conversation further say that you had been so worried and annoyed over the abortion and the case that you had become nervous, and was unable to sleep at night on account of it?"   To each of the foregoing questions the court sustained an objection upon the ground that the matters sought to be elicited were privileged and confidential as matters between a physician and his patient.

It is contended by appellant that the court erred in these rulings, and that the witness can not fully disclose facts concerning herself in open court, and permit other witnesses to testify to such facts, including two physicians who attended her, and then refuse to testify to communications made by her to another physician in regard to the same facts.

The statute (Acts 1861, p. 52; Acts 1881, p. 290), is intended to guarantee to the patient the protection of the silence of his or her physician as to knowledge of the patient's condition acquired in his professional capacity. While in the case at bar appellant sought only to prove the statements of the injured party, yet, if the patient may be compelled to testify to the facts disclosed to her physician,

the protection intended by the statute would be removed. If the proposed testimony was competent, it could only be upon the ground that the privilege had been waived. In *Bigler v. Reyher,* 43 Ind. 112, the court says: "A party, having given evidence in chief in his own behalf, can not, on cross-examination, be compelled to divulge statements made by him when consulting, as a client, an attorney at law." *State v. White,* 19 Kan. 445, 27 Am. Rep. 137.

The examination by the plaintiff of one physician is not a waiver of the privilege as to any other physician. *Penn, etc., Ins. Co.* v. *Wiler,* 100 Ind. 92, 50 Am. Rep. 769; *Record* v. *Village of Saratoga Springs,* 46 Hun 448, approved in 120 N. Y. 646, 24 N. E. 1102.

In *Williams* v. *Johnson,* 112 Ind. 273, the court say: "The fact that the plaintiff had testified that she had sustained injuries, and that she called Dr. Herr, and that he had prescribed for her back and side, did not justify the admission of the evidence of the physician as to what he had or had not discovered as a result of an examination of the plaintiff's person.

In *Barker* v. *Cunard Steamship Co.,* 91 Hun 495, 36 N. Y. Supp. 256, approved in 157 N. Y. 693, 51 N. E. 1089, it is held that the privilege is not waived as to a particular time by calling and examining the physician as to other times.

The court, in *Becknell* v. *Hosier,* 10 Ind. App. 5, states the general rule that a physician is not permitted to disclose confidential communications made to him by a patient, nor the result of observations or examinations made by him upon the person of his patient, unless with the consent of the latter, or unless the privilege is waived, and adds: "When the patient, however, sues the physician for alleged malpractice in the treatment of the injury, then the privilege is waived as to all matters connected with the treatment of this injury in which the physician participated. It would be most manifestly unfair to establish any other rule. This

proposition is analogous to the ruling made where the client sues an attorney for malpractice. *Nave* v. *Baird,* 12 Ind. 318."

In *City of Warsaw* v. *Fisher,* 24 Ind. App. 46, the court held where appellee, a patient, sued appellant for injuries occasioned by its negligence, the fact that the appellee stated what took place between him and his physician did not waive the privilege of the patient.

Appellants contend that under the ruling in *Lane* v. *Boicourt,* 128 Ind. 420, 25 Am. St. 442, the trial court erred in excluding this testimony. In the case named the plaintiff sued the defendant, a physician, for malpractice. As stated in the opinion, "The appellee, his wife and his wife's mother, testified as to all that was done by the appellant at the time the surgical operation which caused the injury to the appellee's wife was performed. The appellant also testified, without objection, to what occurred at that time. He then called Dr. Williamson, who was in attendance as a consulting surgeon, but the trial court refused to permit him to testify to any matter that occurred at the time the operation was performed by the appellant." The court held that this was error, holding that the patient waived the statutory rule. In the opinion, *Hope* v. *Troy, etc., R. Co.,* 40 Hun 438, is held not to be in point, because in that case the physicians were called at different times. In the case before the court there was one time and one occurrence, and that occurrence was given full publicity by the patient. The question related to what took place in the sick-room at the particular time and in the presence of three persons. The language used is an intimation that the evidence was admissible because of this circumstance.

In the case at bar, Mrs. Shepherd did not testify in her direct examination to what took place between her and Dr. McShane. The cases are distinguishable. It is possible that the ends of justice might be served by admitting the pro-

posed testimony, but such course would not be in harmony with the statute and the weight of the authorities.

It is argued by appellee that the question to which objections were sustained was not proper cross-examination, and, besides, that the question of the competency of the evidence excluded is not properly reserved. We have not found it necessary to consider either of these points.

Judgment affirmed.

Wiley, Robinson, and Black, JJ., concur; Roby, C. J., and Henly, J., dissent.

## Dissenting Opinion.

Roby, C. J.—The main opinion holds that an objection was properly sustained to the following question asked of the witness Lillie M. Shepherd: "Q.  I will ask you, Mrs. Shepherd, if, on the 15th day of December, 1897, at your residence on Sherman avenue, in Cerealine town, in Marion county, Indiana, during the time that Dr. Ferguson was visiting you as you have described, if you didn't make this statement to him,—didn't you say to him that your lawyer, Mr. Beckett, had told you that you could make a great deal better case if you had an abortion; that you consented, but told him that you knew no doctor; that he told you he would send you a doctor; that when the doctor came he told you you were a good strong woman, and could have an abortion without it hurting you; that the doctor said he would leave the medicine at Mr. Beckett's office; that your husband went to the office several times for it, but could find no one who knew anything about it; and didn't the doctor then say to you that there was great danger in having an abortion, as it might cause your death; and didn't you then state that you wanted to do right, but that you were poor and the temptation was very great; and didn't you in that conversation further say that you had been so worried and annoyed over the abortion and over the case that you had become

nervous, and unable to sleep at night on account of it?" The objection made to the question was as follows: "The plaintiff objects to the question for the reason it asks the witness to state a matter which is privileged and confidential under the statute, and discloses matters between a physician and his patient."

The question was asked upon cross-examination. No offer to prove was therefore necessary in order to make the exception effective here. At common law physicians were not privileged. In this jurisdiction the privilege is created by the following statute: "The following persons shall not be competent witnesses: * * * Fourth, physicians, as to matter communicated to them, as such, by patients in the course of their professional business or advice given in such cases." §505 Burns 1901. The construction invariably given by the courts to this statute has been broad and liberal in the furtherance of its purpose. *Brackney* v. *Fogle,* 156 Ind. 535, and authorities cited. The witness to whom the question was asked was not a physician. Treating the statute as applicable, as has been done by the parties, and without intimating any opinion on the subject otherwise, I am constrained to dissent from the conclusion reached. Had the question been answered in the affirmative, the answer so given might have been one step in the proving a then intention on the part of the witness to commit a crime.

The statute provides that "Every woman who shall solicit of any person any medicine, drug, or substance, or thing whatever, and shall take the same, or shall submit to any operation or other means whatever, with intent thereby to procure a miscarriage (except when by physician for the purpose of saving the life of mother or child), shall be fined not more than $500 nor less than $10, and imprisoned in the county jail not more than twelve months nor less than thirty days; and any person who, in any manner whatever, unlawfully aids or assists any such woman to a violation of

this section shall be liable to the same penalty." §1997 Burns 1901.

The purpose of the act does not exclude communications made by parties while engaged in planning to commit crime or fraud. "There is no privilege in the case which I have suggested of a party consulting another, a professional man, as to what may afterwards turn out a crime or fraud, and the best mode of accomplishing it." *Reg.* v. *Cox,* L. R., 14 Q. B. D. 153.

In *Hauk* v. *State,* 148 Ind. 238, the appellant was convicted of the crime of producing an abortion. §1996 Burns 1901. The physician who attended the woman at the time of her miscarriage testified, over objection, to facts learned while thus acting. The court, in holding that the defendant had no right to evoke the privilege conferred by §505, *supra,* state: "The statute can not be so construed as to permit a party charged with crime, to invoke it as a weapon of defense in his own favor, instead of its being used as protection for his victim."

"Professional communications are not privileged, when such communications are for an unlawful purpose, having for their object the commission of crime." *State* v. *Smith,* 99 Iowa 26, 30, 68 N. W. 428, 61 Am. St. 219; *State* v. *Kidd,* 89 Iowa 54, 56 N. W. 263; *Hewitt* v. *Prime,* 21 Wend. 77; *Pierson* v. *People,* 79 N. Y. 424, 35 Am. Rep. 524; Hageman, Privileged Com., §126.

A woman proposing to procure an abortion ought to have no privilege therein. The act is made a crime by statute. It is none the less a crime because of its also being one step in the consummation of a fraud. I do not see any reason in discriminating between civil and criminal cases in this regard. 3 Rice, Evidence, §208.

The effect of the privilege has been carried to the extreme limit in deprecating its extension further. 1 Greenleaf, Evidence (16th ed.), §247a, uses the following language: "The chief classes of litigation in which it is in-

voked are actions on policies of life insurance, where the deceased's misrepresentations as to health are involved; actions for corporal injuries, where the plaintiff's bodily condition is to be ascertained; and testamentary actions, where the testator's mental condition is in issue. In all of these cases the medical testimony is 'the most vital and reliable,' 'the most important and decisive,' and is absolutely needed for the purpose of learning the truth. In none of them is there any reason for the party to conceal the facts except to perpetrate a fraud upon the opposing party, and in the first two of these classes the advancement of fraudulent claims is notoriously common. In none of these cases need there be any fear that the absence of the privilege will subjectively hinder people from consulting physicians freely (which is, as we have seen, the true reason for maintaining the privilege for clients of attorneys); the injured person would still seek medical aid, the insured person would still submit to a medical examination, and the dying testator would still summon physicians to his cure. In litigation about wills, policies, and personal injuries, the privilege, where it exists, is known in practice to be a serious obstacle to the ascertainment of truth and a useful weapon for those interested in suppressing it. Any extension of it to other jurisdictions is to be earnestly deprecated."

A new trial of this cause will tend, in my opinion, to the procurement of justice, and I therefore dissent from the main opinion upon the proposition stated.