(May 22, 1911.)

## E. C. JONES and ELIZABETH JONES, Appellants, v. CITY OF CALDWELL, a Municipal Corporation, Respondent.

[116 Pac. 110.]

PERSONAL INJURIES—TWO DEFENSES—SEPARATE COUNTS—DAMAGES—DEFECTIVE SIDEWALK IN CITY—HYPOTHETICAL QUESTION—OPINION OF WITNESS—INSTRUCTIONS—BASED ON EVIDENCE—TWO PHYSICIANS—PRIVILEGED INFORMATION—WAIVER OF PRIVILEGE AS TO ONE—NOT WAIVER AS TO OTHER.

(Syllabus by the court.)

1. Under the provisions of sec. 4187, Rev. Codes, the defendant may set up as many defenses or counterclaims as he may have, but such defenses or counterclaims must be separately stated in separate counts.

2. A hypothetical question which contains facts that are proved or claimed to be proved by either party may be put to an expert for the purpose of obtaining his opinion upon such facts, and by so doing such expert witness does not usurp the province of the jury, as the jury is not compelled to accept the opinions of such expert witness against their will, but will weigh such expert opinions as other evidence is weighed by them.

3. *Held*, that it was error to give that part of instruction No. 13 which reads as follows: "And if you find and believe that the said plaintiff was in bad health, and that her generative organs were infected by gonorrhoea or other loathsome diseases at the time of the injury complained of, notwithstanding that the same might have been aggravated by the fall on the sidewalk, you can only find for the plaintiff to the extent that her troubles were aggravated by said fall," as there was no evidence whatever in the record to the effect

that the plaintiff was in bad health or that her generative organs were infected with gonorrhoea or other loathsome disease.

4. It was error for the court to exclude certain evidence and then give certain instructions based on such excluded evidence.

5. It was error for the court to refuse to give the following requested instruction: "If you find from the evidence that the plaintiff was caused to fall by a defect in the sidewalk negligently permitted to exist by the defendant, the defendant is responsible for all ill-effects which naturally and necessarily follow the injury in the condition of health in which plaintiff then was at the time of such fall, and it is no defense that such injury may have been aggravated and rendered more difficult to cure by reason of plaintiff's state of health at that time, or that by reason of latent disease the injuries were rendered more serious to her than they would have been to a person in robust health." Said instruction contains a correct statement of the law upon some of the evidence given on the trial and should have been given.

6. If the latent condition itself did not cause pain, suffering, etc., to the patient, but such condition plus the accident caused such pain, the fall and not the condition is the proximate cause of the injury.

7. The plaintiff may, under the provisions of subd. 4, sec. 5958, Rev. Codes, waive her right to secrecy in respect to one of her physicians, but such waiver does not operate as a waiver of her right to object to the testimony of another of her physicians called by the defendant.

APPEAL from the District Court of the Seventh Judicial District for Canyon County. Hon. E. A. Walters, Presiding Judge.

Action to recover damages for personal injuries on account of defective sidewalk. Judgment for plaintiffs. Both parties appeal. Judgment reversed.

K. I. Perky and W. A. Stone, for Appellants.

Instructions must be based on the evidence, and it is error to give any instructions not so predicated. (11 Ency. Pl. & Pr. 128–130; 13 Cyc. 238.)

If the latent condition of itself did not cause pain, suffering, etc., but such condition plus the fall caused such pain and suffering, the fall and not the latent condition is, in law,

the proximate cause.   (*Owens v. Kansas City & R. R. Co.*, 95 Mo. 169, 6 Am. St. 39, 8 S. W. 350–352.)

When the attending physicians are called at different times for different purposes, and at different periods of time, and a different degree of confidence is placed by the patient in the various physicians, the patient has a right to call any one of them as a witness without waiving his privilege as to the others.   (*Dotton v. Village of Albion*, 57 Mich. 575, 24 N. W. 786; *Baxter v. City of Cedar Rapids*, 103 Iowa, 599, 72 N. W. 790; *Mellor v. Missouri Pac. Ry. Co.*, 105 Mo. 455, 16 S. W. 849, 10 L. R. A. 36; *Griffin v. Griffin*, 125 Ill. 430, 17 N. E. 782; *Morris v. N. Y. O. & W. Ry. Co.*, 148 N. Y. 88, 51 Am. St. 675, 42 N. E. 410; *Metropolitan St. Ry. Co v. Jacobi*, 112 Fed. 924, 50 C. C. A. 619; *Hope v. Troy & Luisinburg R. R. Co.*, 40 Hun (N. Y.), 438.)

John J. Plowhead, for Respondent.

The case of *Morris v. Ry. Co.*, 148 N. Y. 88, 51 Am. St. 675, 42 N. E. 410, states the correct rule.   This case was decided on the point in controversy, and on that point alone, and it was there held that the privilege was waived.   Our statute (Rev. Codes, sec. 5958, par. 4) does not throw any light on this subject as far as construing the matter at issue is concerned.   If justice is to be done to the parties litigant here, and if plaintiff avails herself of the testimony of Dr. Miller and thereby waives her privilege in regard to him, she also waives her privilege in regard to the testimony of Dr. Stewart, who was asked to testify in regard to the same facts and circumstances concerning which Dr. Miller testified!   Dr. Miller stated what his opinion was and Dr. Stewart should be allowed to do the same thing.   As stated in the New York case, any other construction would work a great injustice on this defendant.

SULLIVAN, J.—This action was brought to recover damages against the city of Caldwell for an injury alleged to have been sustained by the plaintiff, Elizabeth Jones, by rea-

son of a defective sidewalk. The accident, it is alleged, occurred on the 27th day of December, 1909.

The answer denies the allegations of the complaint and alleges as a defense that said plaintiff was guilty of contributory negligence.

On the issues thus made the case was tried by the court with a jury and verdict was returned and judgment entered in favor of the plaintiff in the sum of $850. Both plaintiffs and defendant have appealed from the judgment, and will be referred to in this opinion as plaintiffs and defendant.

It is conceded by the city that there is no testimony to contradict the evidence of the plaintiff Elizabeth Jones, that she stepped on a broken board and fell to the sidewalk; but the city attempted to show that the injury alleged to have been sustained by said plaintiff was not the result of said fall, but was due principally to the fact that said plaintiff had an infectious disease. The bill of exceptions is joint and contains the exceptions of both parties.

It is first contended by counsel for the plaintiffs that the court erred in refusing to compel the defendant to elect between the two defenses which it is claimed are set up in one count of the answer. The allegations of the complaint are denied specifically, and as a further defense it is alleged that if plaintiff sustained any injury whatever from said fall, the same was caused by her own negligence and carelessness. Under the provisions of sec. 4187, Rev. Codes, the defendant may set up as many defenses or counterclaims as he may have, but such defenses or counterclaims must be separately stated, that is, in separate counts, and good pleading requires separate defenses to be stated in separate counts. This court held in *Fox v. Rogers*, 6 Ida. 710, 59 Pac. 538, that the commingling of several causes of action in one count of the complaint is prohibited by the code, but that such commingling was not ground for demurrer, the remedy in such cases being by motion to strike out or compel the pleader to elect. Where a defense consists of specific denials of all the material allegations of the complaint and thereafter sets up some other defense, each of said defenses should be pleaded in separate

counts, and the court erred in not requiring the defendant on said motion of the plaintiffs to elect upon which of said causes of defense he would proceed to trial, or to plead each defense in a separate count.

There is but little dispute as to the facts proven on the trial. It appears from the evidence that said plaintiff was walking along the street of said city in the ordinary manner at about 8 o'clock in the evening, and stepped into a hole caused by a broken board in the sidewalk, and fell on her face to the sidewalk. The evidence shows that she was a woman in good health prior to the accident; it also shows that she had not been free from pain from the date of the accident up to the time of the trial, which was about ten months after the accident occurred, and that an operation was performed to relieve her, which accomplished but little benefit. On the trial the only defense offered by the city was that the plaintiff was suffering from said infectious disease at the time of the injury, and that the injury which she sustained from said fall was due principally to such disease.

The overruling of plaintiff's objection to the following hypothetical questions is assigned as error:

"Assuming that the plaintiff in this case, Elizabeth Jones, while passing along and upon a sidewalk in the city of Caldwell, Idaho, stepped into a hole in said sidewalk, said hole being about fourteen or sixteen inches long, about five inches wide and about six inches deep, and assuming that she fell forward on said sidewalk, and that her right foot after she had fallen remained inside said hole, and assuming that she felt and was in an excellent state of health prior to said fall, what in your opinion, or would such a fall, in your opinion, taking into consideration her size, and that she was between twenty-nine and thirty years of age; taking into consideration her age and previous state of health, would such a fall in your opinion cause such an injury as to necessitate an operation resulting in the removal of certain female organs, to wit: the right and left Fallopian tubes? You may answer yes or no."

A.   "No, sir."

That question was objected to on the ground that it asks for a conclusion of the witness as to what would happen from the events assumed, rather than as to what could happen.

The second question asked was whether the operation consisting of the removal of the Fallopian tubes "was the natural and approximate consequence of the fall previously described to you." This was objected to on the ground that it calls for the conclusion of the witness on the ultimate fact of the case, and on the further ground that it was privileged.

The third question asked was, "what the probabilities are of a fall such as has been described to you in this case sustained by the plaintiff . . . . causing an injury such as to necessitate the operation which you performed upon the plaintiff." This was objected to on the ground that it was incompetent and indefinite, and called for mere probabilities and not facts. All of said questions were answered in the negative to the effect that the operation could not have been caused by the fall. The doctor testified on cross-examination that if there were latent diseased conditions of the female organs, they might be brought into activity by the fall sustained, whereas had it not been for the fall, they might have remained latent and not have caused any actual discomfort.

The points raised by these exceptions are that an expert, such as a physician, cannot testify as to the ultimate facts in the case, viz., as to whether the injury sustained had in fact been caused by the accident to which it is sought by the plaintiff to attribute them. It is admitted that an expert may testify as to whether or not the assumed cause was adequate or capable of producing the actual result, but not as to whether it did in fact produce or did not produce such result. The defendant's theory as to the scope of that hypothetical question is forcibly brought out in his offer of proof whereby he proposed to show that "the probable and proximate cause of said operation was due to the fact that the Fallopian tubes and other female organs of said plaintiff were infected with gonorrhoea and other infectious diseases." The position of counsel for defendant is that the function of an expert in such a case is to decide for the jury whether or not the actual

result was produced by the alleged cause to which the plaintiff seeks to attribute it or whether it was produced by some other independent cause; and the position of the plaintiffs is that a witness can only testify to the adequacy of the acts to produce the effects, leaving the jury to infer from the testimony as to which of the adequate causes was the actual cause.

Dr. Miller, who was the regular physician of the plaintiff, testified that he was assisted in an operation on plaintiff by Dr. Stewart at the hospital in Boise, at which time the right and left Fallopian tubes were removed, and that there was infection in said tubes. Dr. Stewart was employed by Dr. Miller to assist in the operation, and not by the plaintiffs. Dr. Stewart testified that, at Dr. Miller's request, he assisted him in performing the operation. He further testified in answer to said hypothetical question that in his opinion said fall would not have caused the injury complained of.

These hypothetical questions all call for the opinion of the witness based on an assumed state of facts—the facts as recited in the first hypothetical question. A hypothetical question in which are contained the facts which are proved or claimed to be proved by either side may be put to an expert for the purpose of obtaining his opinion. (Underhill on Evidence, sec. 188, and authorities there cited.) As we understand those questions, they simply call for the opinion of the doctor upon the assumed state of facts, and passing for the present the objection that the second question contained matters confidential and privileged, we do not think it was intended that the opinion of the expert should usurp the province of the jury. The witness was called upon to give his opinion of the results of certain facts or acts, and no one could compel the jury to accept his conclusion against their will. If other medical experts had testified in the case directly in conflict with the views expressed by the witness referred to, the jury would have been the final judge of the evidence and the weight to be given to it. Neither of the experts could have usurped the province of the jury; he could only give his opinion, and the jury could reject it if they

concluded from all of the evidence that the witness was mistaken. (See Wigmore on Evidence, sec. 673.)

The next question raised by the plaintiffs is the giving of instruction No. 13. That part of said instruction excepted to reads as follows: "And if you find and believe that the said plaintiff was in bad health and that her generative organs were infected by gonorrhoea or other loathsome diseases at the time of the injury complained of, notwithstanding that the same might have been aggravated by the fall on the sidewalk, you can only find for the plaintiff to the extent that her troubles were aggravated by said fall." There is no evidence whatever in the record to the effect that the plaintiff was in bad health or that her generative organs were infected with gonorrhoea or other loathsome diseases. There is nothing in regard to said loathsome disease in the record except as found in the questions asked by counsel for the defendant, which the plaintiff answered in the negative, and in the offer of certain evidence in regard thereto which the court excluded. It is error for the court to exclude certain evidence and then give instructions based on such excluded evidence. After having excluded the evidence of said disease, the court by said instruction gave the defendant the full benefit of the questions which were not allowed to be answered by Dr. Stewart. Instructions must be based on the evidence, and it is error to give instructions based on evidence offered by one of the litigants and excluded by the court.

The action of the court in refusing to give the following instruction requested by the plaintiff is assigned as error: "If you find from the evidence that the plaintiff was caused to fall by a defect in the sidewalk negligently permitted to exist by the defendant, the defendant is responsible for all ill-effects which naturally and necessarily follow the injury in the condition of health in which plaintiff then was at the time of such fall, and it is no defense that such injury may have been aggravated and rendered more difficult to cure by reason of plaintiff's state of health at that time, or that by reason of latent disease the injuries were rendered more difficult to cure by reason of plaintiff's state of health at that

time, or that by reason of latent diseases the injuries were rendered more serious to her than they would have been to a person in robust health.''

That instruction contains a correct statement of the law upon the subject there involved, and upon the evidence introduced on the trial the instruction should have been given. A person or corporation has no more right to negligently inflict injuries upon a sick person than upon a well person, and the existence of latent disease brought into activity by a fall or other injury would not constitute a defense to an action to recover damages for such injuries. Dr. Stewart testified that the plaintiff might have been suffering from latent infection which, however, would be likely never to break into activity or cause any discomfort or illness or pain except for a violent fall or similar accident. If that be true, in this case the proximate cause of the pain, discomfort and suffering from such latent disease would be the fall and not the latent condition. If the latent condition itself did not cause pain, suffering, etc., but such condition plus the fall caused such pain, the fall and not the latent condition is the proximate cause.

In *Owens et al. v. Kansas City etc. Ry. Co.*, 95 Mo. 169, 6 Am. St. 39, 8 S. W. 350, it was held that even though, owing to plaintiff's health, the injuries received were more difficult to cure, and by reason of latent disease were more serious than they would have been to a person of robust health, the railroad company would be liable for the injuries, and that it was no defense to say that the injuries would not have occurred or would not have been so great had the passenger been in good health.

In *McCahill v. N. Y. Transp. Co.* (N. Y.), 94 N. E. 616, it was held that where an injury precipitated an attack of delirium tremens, resulting in death, the injury was the proximate cause of the death. In the course of the opinion the court said:

''The principle has become familiar in many phases that a negligent person is responsible for the direct effects of his acts, even if more serious, in cases of the sick and infirm

as well as in those of healthy and robust people, and its application to the present case is not made less certain because the facts are somewhat unusual and the intestate's prior disorder of a discreditable character. (Authorities cited.) The principle is also true, although less familiar, that one who has negligently forwarded a diseased condition, and thereby hastened and prematurely caused death, cannot escape responsibility, even though the disease probably would have resulted in death at a later time without his agency."

In *Louisville etc. R. R. Co. v. Jones,* 83 Ala. 376, 3 So. 902, it was held that if an intestate "had pneumonia or incipient pneumonia at the time she received the injury, and it could be known that she would ultimately die of that disease, this would not necessarily, and as a matter of law, relieve the railroad of all responsibility. If the injury was caused by the negligence of the railroad company . . . . and if it contributed and hastened her death, then the corporation would not be guiltless."

In *State v. Smith,* 73 Iowa, 3, 34 N. W. 597, the court said:

"It surely ought not to be the law that because a person is afflicted with a mortal malady, from which he must soon die, whether his ailment be caused by natural or artificial causes, another may be excused for acts of violence which hasten or contribute to or cause death sooner than it would otherwise occur."

However, the probability of later death from existing disease, for which the defendant was not responsible, would be an important element in fixing the amount of damages, but it is not a defense.

The above authorities fully sustain the rule applicable to this case.

However, counsel for defendant contends that said operation was not rendered necessary because of the accident but that it was made necessary because of the diseased condition of the plaintiff. If such diseased condition were the proximate cause of the operation, the defendant had a right to show that on the trial, as the plaintiff's contention is that the operation was made necessary because of the fall. The

defendant had a right to show by proper evidence that it was not made necessary because of the fall; or, in other words, that the fall was not the proximate cause of the operation.

The next assignment of error involves the question as to whether the plaintiff, by calling Dr. Miller, her regular physician, waived the privilege of objecting to the testimony of Dr. Stewart given her by subd. 4 of sec. 5958, Rev. Codes, which is as follows:

"There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate; therefore, a person cannot be examined as a witness in the following cases: . . . .

"4. A physician or surgeon cannot, without the consent of his patient, be examined in a civil action as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient."

It appears from the record that the plaintiff was taken to St. Luke's Hospital in Boise City by Dr. Miller, who called in Dr. Stewart to perform the operation. The doctor testified in answer to one of the above-mentioned hypothetical questions that in his opinion said fall would not have caused the injury which necessitated said operation. The plaintiff called Dr. Miller as a witness but did not call Dr. Stewart. The defendant called the latter as a witness. The question is thus presented as to whether the calling of one physician by the plaintiff is a waiver of her privilege as to another physician who had attended her.

The authorities are in conflict upon this question. It was held in *Morris v. New York, Ont. & W. Ry. Co.*, 148 N. Y. 88, 51 Am. St. 675, 42 N. E. 410, that if two physicians are called to examine a person in their professional capacity, under such circumstances he has a right to insist that the knowledge gained by them shall not be disclosed, and if he calls one of them to testify in his behalf at a subsequent trial, he thereby waives the right to insist upon secrecy and the other may therefore be called and examined as a witness by his antagonist. That case is the only one cited by the

defendant in support of his contention on the question under consideration. That opinion was delivered by Justice O'Brien, and after citing a number of New York decisions, among them *Hope v. Troy etc. R. R. Co.*, 40 Hun (N. Y.), 438, and *Record v. Saratoga Springs*, 46 Hun, 448, the learned justice says:

"In this condition of the authorities, we must regard the question as still open. We think that a construction of the statute which permits a patient, who has been attended by two physicians at the same examination or consultation, to call one of them as a witness to prove what took place or what he learned, thus making public the whole interview, and still retain the right to object to the other, is unreasonable and unjust, and should not be followed. The waiver is complete as to that consultation when one of them is used as a witness."

Prof. Wigmore, in 4 Wigmore on Evidence, in sections 2380 to 2390, inclusive, reviews the history and policy of the statutes in regard to confidential relations and communications and says:

"Certain it is that the practical employment of the privilege has come to mean little but the suppression of useful truth,— truth which ought to have been disclosed and would never have been suppressed for the sake of any inherent repugnancy in the medical facts involved."

And again: "The whole reason for the privilege is the patient's supposed unwillingness that the ailment should be disclosed to the world at large; hence the bringing of a suit in which the very declaration, and much more the .proof, discloses the ailment to the world at large, is of itself an indication that the supposed repugnancy to disclosure does not exist."

And again: "In actions for personal injury, the permission to claim the privilege is a burlesque upon logic and justice."

In sec. 2390 said author takes up the subject of waiver by calling the physician, and states:

"To call a physician as a witness to one's physical condition is a waiver of the privilege as to the knowledge acquired

by other physicians of the same condition. This is generally not conceded in the judicial rulings; but it cannot be escaped, if regard is had to the foundation of the privilege.''

In the last sentence the author concedes that his views there expressed are generally not conceded by the decisions of courts of last resort. However, the legislature in this state enacted said sec. 5958, which provides, among other things, that a physician or surgeon cannot, without the consent of the patient, be examined in a civil action as to any information acquired in attending the patient which was necessary to enable him to prescribe or to act for the patient. If the provisions of that section result in the suppression of truth, this court has not the power or the authority to repeal said statute by judicial decision.

As sustaining the view that a plaintiff may waive his privilege in regard to one of his physicians and not waive it as to another, see *Hope v. Troy etc. Ry. Co.,* 40 Hun (N. Y.), 438; *Record v. Village of Saratoga Springs,* 46 Hun (N. Y.), 448; *Citizens' St. Ry. v. Shepherd,* 30 Ind. App. 193, 65 N. E. 765; *Baxter v. City of Cedar Rapids,* 103 Iowa, 599, 72 N. W. 790; *Dotton v. Village of Albion,* 57 Mich. 575, 24 N. W. 786; *Mellor v. Mo. Pac. Ry Co.,* 105 Mo. 455, 16 S. W. 849; *Metropolitan St. Ry. Co. v. Jacobi,* 112 Fed. 924. It was held in *Pa. M. Life Ins. Co. v. Wiler,* 100 Ind. 92, 50 Am. Rep. 769, that the examination by the plaintiff of one physician is not a waiver of the privilege as to any other physician. (*Williams v. Johnson,* 112 Ind. 273, 13 N. E. 872.)

We conclude that the decided weight of authority is in favor of the view that a waiver of the privilege as to one physician does not waive the privilege as to any other physician. It is also very clear that our statute forbids and prohibits the examination of a physician without the consent of the patient, and this privilege extends to the *individual witness* and not to the *consultation* or *transaction* in which he was a physician. In other words, each individual physician is a witness within the meaning of this statute, rather than a number of physicians who may be present or participate

in a consultation, being treated as one witness, as appears to be done by Prof. Wigmore. As we view it, the plaintiff did not waive the privilege so far as Dr. Stewart is concerned, by calling Dr. Miller to testify for her, and if the provisions of said sec. 5958 resulted in the suppression of truth, that is a matter for legislative consideration. Counsel for defendant contends that Dr. Stewart was called to testify as an expert and that his evidence should have been given to the jury for that reason. By calling a physician as an expert, the provisions of said sec. 5958 cannot be evaded and the witness permitted to base his opinions on information acquired while attending the patient. If that were permitted, the provisions of said statute would be without force or effect.

We therefore conclude that the plaintiff did not waive the privilege so far as Dr. Stewart is concerned by calling Dr. Miller as a witness. The judgment must therefore be *reversed* and a new trial granted, and it is so ordered. Costs of both appeals are awarded to the plaintiffs.

Ailshie, Presiding J., concurs.