VICTORIANO MUÑOZ, JR., ETC., Plaintiff and Appelle, *v.* MARIO ESCUDERO ET AL., Defendants and Appellants.

No. 4884. Argued May 20, 1930.—Decided July 8, 1931.

*Dubón & Ochoteco* for appellants. *Feliú & La Costa* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the Court.

This is an action for damages suffered by a passenger arising out of a collision between two public service autobuses (*guaguas*). The complaint prayed for an award of $25,000. Judgment was rendered for $3,000. Defendants appealed and assigned in their brief ten errors. The first two refer to preliminary questions. It is contended in the third that there is a fatal variance between the pleadings and the proof. The fourth, fifth, sixth, seventh, and eighth errors relate to the imputed negligence, the proof of negligence, and the contributory negligence charged. Under these assignments the appellants discuss the cause and consequences of the accident and the injuries received by the plaintiff. The ninth error refers to the amount of the damages; and the tenth, to the costs.

In order to examine these assignments in the light of the facts, we will summarize the latter as they are set out in the complaint. At the proper time we will refer to the facts held proved by the trial court.

The plaintiff, who being only nineteen years of age appeared represented by his father, alleges that both defendants, on the 23rd of August, 1927, and thereafter, pursuant

to certificates issued by the Public Service Commission, were engaged in the business of transporting passengers for hire in the Municipality of San Juan, in motor vehicles known as autobuses, designated specifically as "Eiseman" and "Grape Nuts."

That on the aforesaid date, the plaintiff, having paid for his transportation, was traveling as a passenger on the autobus "Eiseman," which was proceeding from Santurce towards San Juan, on Ponce de León Avenue, manned, conducted, and driven by employees of its owner, defendant Escudero, and said employees as well as the employees of the other defendant, Mauret, who were then driving and conducting the other autobus, "Grape Nuts," started a race between both vehicles at great speed, and upon approaching the Capitol the autobus "Grape Nuts" stopped suddenly, without signalling, whereupon the autobus "Eiseman" collided sharply with it and as a result the plaintiffs received "severe injuries and blows in the inguinal region, on one leg, on one arm, and in other parts of his body, causing him intense and prolonged suffering"; that the collision was due to the speed at which the vehicles were driven by their respective chauffeurs or conductors, and to the fault and negligence of the latter.

That by reason of these injuries, there were removed from plaintiff's body, by surgical operation, the seminal vesicles, the prostate gland, and also the right epididymis, and he had to be confined in his home and in the hospital for about two months, being deprived of his power to procreate and being unable to work to earn his living, and has suffered intense physical pains and mental anguish.

We will now examine the first error assigned. It covers three contentions, viz.: (a) That the contributory negligence of the plaintiff appears on the face of the complaint; (b) that it does not appear from the latter that the drivers of the autobuses were acting within the scope of the service in

which they were employed or in the performance of their duties; and (c) that the complaint does not allege that the injuries of which the plaintiff complains were the consequence of the negligence of the defendants.

In support of the first point, the appellants cite various decisions which at first view seem to sustain their theory that the plaintiff, in furtherance of his own safety, should have objected to the manner in which the vehicle was being conducted as alleged in the complaint. But analyzing these cases we find that they are not similar to the present one. Here we are considering public service vehicles, which were operated over a public road, for hire, and the plaintiff was an ordinary passenger, who occupied the seat to which he had a right and who relied, as a natural thing, on the skill of the person who was conducting the vehicle. See 42 C. J. 1054, sec. 803, where it is said in part: "A common carrier by automobile owes to his passengers the same degree of care as is required of any other common carrier"; and the same volume 42, p. 1177, sec. 955, where it is stated partially: "Where the passenger does not have charge or control of the vehicle or of the driver or operator thereof, the contributory negligence of the driver will not be imputed to a passenger for hire riding in a taxicab, motor bus, or other public or hired motor vehicle."

Nor are the appellants right as to the second point raised. In order to justify this conclusion, it will suffice for us to refer to a much stronger case than the present one, to *Sánchez* v. *Asiatic Petroleum Co.,* 40 P.R.R. 98. They are not right either as to the third point. Read correctly, the complaint contains the averment which the appellants claim is not found therein, namely, that the injuries sustained by the plaintiff were the consequence of the negligence of the defendants.

The appellants assign as error the action of the trial court in denying their application to be furnished by the plaintiff with certain particulars concerning the injuries suf-

fered by him. In our opinion, considering the attendant circumstances, it has not been shown that the court abused its discretion. The application was made on March 24, 1928, and was notified on April 2nd, the same day on which the defendants filed their answer. The conduct of the defendants reveals that they were perfectly prepared, and an examination of the particulars demanded leads us to the conclusion that said particulars pertained to the evidence.

Moreover, in studying the case we have found that some days later and before the trial, on April 23, 1928, the defendants were allowed a medical examination of the plaintiff, upon their request made on the 18th of the same month.

The appellants, by the third error assigned, raise the question of variance. They justify their position by maintaining that "the question to be considered is whether the removal of the right epididymis of the plaintiff, etc., were caused by the blow suffered in the inguinal region, which is what is alleged in the complaint, and which constitutes the cause of action relied upon by the plaintiff."

They refer to the finding of the trial court in the sense that it was proved that the plaintiff had just undergone an operation on the left epididymis before the accident, that the tuberculosis of the epididymis is always secondary, and that the traumatism accelerates or hastens the tuberculous infection.

They analyze in detail the expert testimony introduced by both parties, and then say:

"Having established the facts above stated, and considering them in the light most favorable to the plaintiff, we can only come to the conclusion that if it be true that a traumatism occurred, such traumatism could not have produced tuberculosis of the plaintiff's epididymis, as the most it could have done was to accelerate or aggravate the tuberculous condition already existing in said epididymis . . .

"In these circumstances, the cause of action which the plaintiff exercised and alleged in his complaint was totally different. According to his complaint, the blow produced the tuberculosis claimed,

which is scientifically impossible; the only possible thing was that the blow accelerated or aggravated a tuberculosis already existent, which is a different cause of action.''

They invoke the following holding: ''The plaintiff should be confined to the injuries alleged for his damages. He may have received previous injuries. For these he cannot recover in this action, and, if the injuries now sustained are a mere aggravation of those previously received, he cannot recover therefor, because he has not so alleged in his complaint. That would be a different cause of action from that which he has now preferred.'' *Maynard* v. *Oregon R. & Nav. Co.*, 46 Or. 15. 68 L.R.A. 477; 78 Pac. 983. They cite other cases supporting the same theory, all from the State of Oregon.

We believe that there was no error. In the first place, it should be borne in mind that it is not true that the plaintiff alleged as his sole cause of action the extirpations mentioned. He alleged that he suffered other blows and intense and protracted pains in all his body.

In the second place, as the appellee points out in his brief: ''The decisions relied on . . . all hinged upon a substantive question and not a procedural one. Nor did they involve judgments granting a recovery, as in the present case, for injuries and damages occurring before those averred.''

In 21 Cal. Jur. 261, 263, 264, we find the following discussion, which clarifies the point now in controversy:

''Thus failure of the proof to establish one's interest or right to recover to the extent claimed in his pleading, or the fact that total failure of consideration is alleged and only partial failure is established, does not constitute a variance.

''A material variance is one which has misled the adverse party to his prejudice in maintaining his action or defense on the merits.

''Whether a variance is material depends, of course, upon the particular circumstances of each case.

''Clearly a variance is immaterial and may be disregarded where

. . . the case was as fully and fairly tried upon the merits as though the variance had not existed.

"And it is apparent that one is not prejudicially misled where the facts of the disputed transaction are correctly set forth in the pleadings of the adverse party."

We shall now proceed to examine the assignments of error numbered four to eight, which, as we have already said, refer to the imputed negligence, the proof of negligence, and the contributory negligence charged, and to the cause and consequences of the collision and injuries.

The evidence that the collision which caused the injuries received by the plaintiff was due to the negligence of the employees of the defendants, as alleged in the complaint, is conflicting. This conflict was decided in favor of the plaintiff and, as it has not been shown that this finding was the result of passion, prejudice, partiality, or manifest error, we have no basis for a reversal of such ruling.

Much emphasis is laid upon the fact that the trial court in its findings of fact referred solely to the great speed of the autobuses and that it did not declare as proved that a race had taken place. Indeed, it so appears from the first part of the statement of facts and opinion of that court, but if the opinion is further examined it will be seen that the court said:

"Autobuses are not in themselves dangerous instrumentalities or devices. What makes them dangerous and what constitutes criminal negligence is the careless driving thereof; operating them at a rate of speed not authorized by law for the purpose of racing them against each other, with a manifest disregard for individual safety and a high degree of irresponsibility and indifference for the life of those who travel in them as passengers or who must use the streets upon which they are operated."

It may be concluded that this was a mere omission. In the evidence there are sufficient elements to establish that the autobuses "were racing at great, vertiginous speed." That being so, liability attaches to both vehicles. If the

autobus ."Grape Nuts" had not stopped, perhaps the collision would not have occurred; but if the autobus "Eiseman" had not undertaken to race with the former, the collision would not have occurred either.

In *Cruz et al.* v. *Frau,* 31 P.R.R. 87, 93–94, this Court, speaking through Mr. Justice Franco Soto, expressed itself thus:

"Speeding is generally the origin of serious accidents, and that is the reason why the speed is regulated by all pertinent statutes and a violation of the law is of itself considered negligence. Driving as much to the right as possible by every driver or chaufffeur is another precaution provided for by law, and its violation generally implies negligence. The racing of motor vehicles on a public road is another violation of the Automobiles Act and the violators of this provision are guilty of negligence and liable for the damage that they may cause other persons. (Section 13, supra.) We are fully convinced that the conditions under which the facts occurred made the defendant in this case liable for negligence for all or some of the violations to which we have referred.

"It is no defense to undertake, as the defendant does, to put all of the responsibility for the death of Ramón Méndez upon the unknown chauffeur who was driving the car that came up behind, attempted to pass in such a careless manner as to be the cause of the death of Ramón Méndez. Whatever participation the unknown chauffeur may have had in the accident, the facts and circumstances of the case have shown that the defendant contributed as an efficient cause to the accident, because he did not take the precautions required by law as to speed, driving to the right or giving way to the car that came behind. There is no doubt that if the defendant had observed these precautions required by the Automobiles Act, the collision with the other automobile would not have happened, and much less the death of Ramón Méndez as a relation of cause and effect.

" 'The general doctrine is that it is no defense, in actions for injuries resulting from negligence, that the negligence of third persons, or an inevitable accident, or an inanimate thing, contributed to cause the injury to the plaintiff, if the negligence of the defendant was an efficient cause, without which the injury would not have occurred.' 22 R.C.L. 128."

The fact that the trial court, in the paragraph of its opinion which we have copied above, referred to criminal negligence is assigned as error. A mere reading of the paragraph suffices to conclude that this error is nonexistent. Due, perhaps, to his recent study of the case, and influenced by the details of the evidence which he recalled at that time, the trial judge, in his characterization of the negligence, went a little too far. But his judgment was not based on such an estimate. Moreover, the reasoning and remarks appearing in his opinion afford no grounds of appeal. It is the judgment itself with which we are concerned. And the judgment is supported by the pleadings and the evidence.

The appellants insist that the plaintiff was guilty of contributory negligence in not protesting or remonstrating against the race. What was said in passing upon the third question raised by the first assignment of error is applicable.

It would seem useful to add here the following citations and reasoning, which we excerpt from appellee's brief. There it is said:

" 'Yet it is a matter of common knowledge that under ordinary circumstances such occupants do largely rely upon the driver, who has the exclusive control and management of the vehicle, exercising the required degree of care, and for that reason courts are not justified in adopting a hard and fast rule that they are guilty of negligence in doing so.' Boland v. St. Louis–San Francisco Ry. Co., 284 S. W. 141, 144.

"It has been held that a passenger riding in the passenger compartment of a taxicab being driven at twenty-five to thirty miles per hour, who sees an approaching car seventy-five or one hundred feet distant, which has the right of way over the taxicab, is as a matter of law free from contributory negligence, although he fails to protest or to warn the driver of the cab. McKellar v. Yellow Cab Co., 181 N. W. 348.

"And even under these rules the question is always whether the conduct of the passenger contributed to cause his injury. 42 C. J. sec. 950, pp. 1173–1175.

"How could the appellee persuade the chauffeur of the 'Eiseman' motorbus to lessen his speed? How was the appellee to control his

actions as he approached the 'Grape Nuts' autobus? These were public service vehicles and, as such, according to the Public Service Law and the testimony in the record, they had a fixed route. The appellee traveled as a passenger for hire. The driver had complete control. There is nothing in the record to show that the latter did anything at the direction of any of the passengers.

"According to the rules applicable to public carriers, the appellants were in this case bound to use at least reasonable and ordinary care for the protection of their passengers, and to anticipate that their vehicles might meet others on the street, to keep a proper lookout for them, and to use care to have their machines under such control as to enable them to avoid collisions. 10 C. J. sec. 1305, p. 867.

"See the cases cited in Notes 42 and 43 illustrating the application of this doctrine.

"And the subject of contributory negligence is treated in 10 C. J. 34 (analysis of the title).

"If the contentions of the appellants were to be upheld it would have to be declared that in the present case the cause of the injuries of the appellee was his own negligence; the doors would then be open to a disorderly and unbridled operation of these vehicles; the immunity of those who are in this business for gain would be sanctioned; and it would be necessary to remake the law of negligence.

"In a well-known modern textbook the rules are stated thus:

" 'In order that the contributory negligence of a passenger be a bar to the recovery for his injuries, it is necessary that such negligence be a proximate cause of the injuries.' Huddy, Automobiles, 7th ed., sec. 822.

"And a passenger or guest,

" '. . . in the absence of extraordinary circumstances, is not guilty of contributory negligence, if he relies on the care of the driver and takes no active steps in order that the machine be properly conducted.' " Id. Id., sec. 825.

"See also the very interesting case of McDonald v. Messaba Ry. Co., 163 N. W. 298, which was a case involving 'jitneys' or autobuses very similar to the present one. It contains an instructive exposition of the doctrine."

Now we go into the most subtle part of the case, that is, the effect of the expert testimony and the basis which that testimony offers for granting a pecuniary indemnity. The

trial judge, in his statement of the case and opinion, said in part as follows:

"Every trauma to the groin or to the testicle manifests itself by an inflammatory process; if the patient is suffering from tuberculosis, a struggle begins between nature and the bacillus; the latter, aided by external forces, tends to invade the weakest portion of the organism; it searches for what is called the *locus minore resistentia* and there it produces its greatest development and the greatest damage; so that a person can be suffering from a 50 per cent virulent infection, but if a trauma occurs, the latter will be responsible for the other 50 per cent which completes the unit representing a total infection . . . It thus having been established that, notwithstanding there was a first operation performed upon the plaintiff, the second would not have been necessary had not the trauma intervened—that is, the blow which he suffered in the groin or scrotum—let us see now what responsibility attaches to the defendants. . .

"The evidence introduced by the plaintiff has established that he suffered injuries in certain parts of his body. There is no conflict whatever in regard to his testimony to the effect that he received a blow in his male reproductive organs. The testimony of the medical expert witnesses, which we have analyzed, shows to us what the effect of this shock was upon the body economy of the plaintiff. Does the fact that he was a tubercular patient add to or lessen the liability of the defendants? We hold that it does not . . .

"The fact that a person suffers from pulmonary tuberculosis, even though said sickness is in an incipient stage, is no excuse, justification, nor ground for denying him damages, if such person has an accident and as a result thereof the progress of his infirmity is accelerated or precipitated. The law makes no distinction. It is general . . . Conceding 50 per cent to the infirmity, the accident is responsible for the other 50 per cent to complete the entire damage. It would be an injustice to deny a sick person the right to recover damages aris'ng out of an accident on the ground that his previous sick condition was the proximate cause of the injury sustained, and not the accident itself. We cannot deny in this case the possibility that in the course of time the right testicle of the plaintiff would have become tuberculous; but the real, positive, and convincing fact is that the accident provoked the rapid tuberculization which required the second surgical operation. It was the spark which ignited the fire; the drop of water which overflowed the glass."

As to the weighing by the trial court of the expert testimony presented, we will only say that the appellants do not convince us that there was any error. The findings made are based on the testimony of experts for the plaintiff and, to a certain extent, on that given on behalf of the defendants. As to the legal doctrine applied, we believe that it finds support among the authorities. These authorities are so aptly and concisely presented in the brief of the appellee that, instead of citing them for ourselves and using our own language, we think it proper to transcribe the following from said brief:

"The true rule which determines the responsibility of the appellants is set forth in the following authorities, which are also in point with regard to the third error assigned by the appellants (their brief, p. 26; this brief, p. 12); Smart v. Kansas City, 105 S. W. 709; 14 L.R.A. (N. S.) 567; Sandel v. State of South Carolina, 104 S. E. 567; 13 L.R.A. 1268; Jones v. Caldwell, 116 Pac. 110; 48 L.R.A. (N. S.) 119; McCahill v. N. Y. T. Co. 201 and 221; 94 N. E. 616.

"The treatises and encyclopedias are also to the same effect. See 10 C. J., sec. 1392, pp. 978–982; 22 R.C.L., sec. 33, 36, and 38, pp. 150 et seq. and 154.

"Of special aid is an opinion in a case from which we take the following excerpt:

" 'In cases where the defendant's negligence caused a disease, developed a latent tendency to disease, aggravated a prior disease, or led in immediate sequence to disease, the defendant must respond in damages for such part of the diseased condition as his negligence caused; and if there can be no apportionment, or if it cannot be said that the disease would have existed apart from the injury inflicted by the defendant, then the defendant is responsible for the diseased condition.' Chicago, etc. v. Saxby, 68 L.R.A. 164, 167.

"In the case last cited a judgment was upheld in favor of the plaintiff for $10,000, for the fracture of the neck of the femur and the ankylosis of the joint of one knee by tuberculosis which had set in the same.

"In another case similar to the one just cited, the same doctrine was laid down in the sense that 'although one injured by another's negligence was suffering from tuberculosis of the knee, if the knee was injured by the negligence, the negligent person is responsible

for all effects which naturally followed from the injury; and it is no defense that the injuries may have been aggravated, or rendered more difficult to cure, by reason of plaintiff's state of health, or that, by reason of latent disease, the injuries were rendered more serious to her than they would have been, had she been in robust health.'

"In many other cases collected in a note in 48 L.R.A. (N. S.) 123, the rule is succinctly expressed in these words:

" 'The fact that the person injured had a predisposition to disease, or a latent weakness, cannot avail the defendant to relieve him from liability from the damages which ensue when his negligence brings the dormant disease into activity, or aggravates the latent weakness.'

"Another typical case, in point with the present one, is Jones v. Caldwell, 48 L.R.A. N. S. 119.

"And in the case of McCahill v. N. Y. T. Co. (supra) the Court expressed itself thus:

" 'The appellant's automobile struck and injured the traveler. The injuries precipitated, hastened, and developed delirium tremens, and these caused death. There can be no doubt that the negligent act directly set in motion the sequence of events which caused death at the time it occurred. Closer analysis shows that the real proposition urged by the appellant is that it should not be held liable for the results which followed its negligence, either, first, because those results would not have occurred if intestate had been in a normal condition; or, secondly, because his alcoholism might have caused delirium tremens and death at a later date, even though appellant had not injured him. ' This proposition cannot be maintained in either of its branches, which are somewhat akin . . .

" 'The principle is also true, although less familiar, that one who has negligently forwarded a diseased condition, and thereby hastened and prematurely caused death, cannot escape responsibility, even though the disease probably would have resulted in death at a later time without his agency. It is easily seen that the probability of later death from existing causes for which a defendant was not responsible would probably be an important element in fixing damages, but it is not a defense.' McCahill v. N. Y. T. Co., 48 L.R.A. (N. S.) 131, 132.

"Another interesting case which upholds the judgment is Normile v. Wheeling, T. Co., 68 L.R.A. 9101-6.

"A study of the authorities cited by the appellants (their brief, p. 43, bottom, and p. 44), really confirms the same doctrine found in the cases which we have cited under this assignment."

We have only to examine now the ninth and tenth errors relating to the amount of the damages and to the imposition of costs. Considering all the circumstances, we do not believe that the sum of $3,000 awarded was excessive. There is no ground for maintaining that the district court abused its descretionary power in imposing the costs on the defendants.

By virtue of all the foregoing, the appeal must be dismissed and the judgment appealed from affirmed.